**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Scott RICHARDSON, Rafael Bruno Crespo-Diaz, Reinaldo Crespo-Diaz, Benjamin Wayne Reese, Defendants-Appellants.**

**No. 84–3572.**

United States Court of Appeals,
Eleventh Circuit.

July 12, 1985.

Stuart I. Hyman, Orlando, Fla., for Richardson.

Raymond L. Goodman, Orlando, Fla., for Rafael Bruno Crespo-Diaz.

Robert A. Leventhal, Orlando, Fla., for Reinaldo Crespo-Diaz.

Jay Paul Cohen, Orlando, Fla., for Reese.

Paul J. Moriarty, Asst. U.S. Atty., Orlando, Fla., for U.S.

Before FAY and JOHNSON, Circuit Judges, and DYER, Senior Circuit Judge.

JOHNSON, Circuit Judge:

The four appellants in this case were convicted of conspiracy to possess cocaine with intent to distribute and possession of cocaine with intent to distribute. These charges grew out of an undercover investigation conducted by the Drug Enforcement Agency with the help of a confidential informer.

On March 12, 1984, the informer met with appellant Scott Richardson and received a small amount of cocaine for purposes of distribution. Afterwards, the informer approached some agents of the DEA and told them about Richardson, suggesting that the contact might lead to larger sales of drugs. The agents promised to pay the informer's expense money and possibly a larger sum after suspects were convicted but they never mentioned any amounts; the informer had never received more than $1,500 for his cooperation in prior cases.

The informer met again with Richardson later in March and delivered payment for the cocaine previously given to him. The DEA taped their conversation. The informer contacted Richardson again in April and offered to "do a pound" for him. Richardson, while expressing some reservations, said that he would "check around." He then called an acquaintance, Garry Craddock, to ask if he could obtain one pound of cocaine. Craddock in turn contacted Benjamin Reese, a person with whom he had sold cocaine in the past, for the same purpose. Eventually Craddock and Reese met with several other conspirators, including Rafael and Reinaldo Crespo-Diaz, where they all agreed to sell a pound of cocaine for $17,000 of the $22,000 that Richardson would demand from the buyers. During this same time Richardson carried on a series of telephone negotiations with the informer, each taped by the DEA, regarding possible methods of exchanging the drugs and the purchase money while keeping the drugs and money in separate locations at all times. Craddock also negotiated regarding the terms of the exchange.

On April 25, 1983, Richardson and Craddock met the informer and DEA Agent Kevin Behan at a convenience store. Behan remained at the store with the money while the informer went along with Richardson and Craddock to the residence of Reinaldo Crespo-Diaz in order to inspect the cocaine. When they arrived at the house they found Benjamin Reese, Reinaldo Crespo-Diaz, Rafael Crespo-Diaz, and Nancy Machado-Leon inside. Reese directed Rafael Crespo-Diaz to go get the cocaine for inspection and he did so. As the informer weighed the cocaine, he discussed price with Richardson. Once satisfied of the weight of the cocaine, the informer stated that he was ready to go back to the convenience store and retrieve the payment from Behan, who was waiting there. Richardson sent Reese to go with the informer.

Behan arrested Reese at the convenience store while agents surrounded Reinaldo's house. Once Behan had arrived at the house he knocked on the door, identified himself and asked that the occupants open the door. From the rear lawn of the house another agent could see through a window that Rafael and Reinaldo Crespo-Diaz were running down a hallway to enter a bathroom. Seconds later he heard a toilet flush. At this point Behan kicked in the front door of the house and the officers entered and identified themselves. Reinaldo Crespo-Diaz signed a DEA consent-to-search form after an agent explained it to him in Spanish.

**1520**

While a search of the house was in progress, Richardson stood handcuffed on the front lawn and a search of his person produced two slips of paper containing the phone numbers of Craddock and an undercover DEA office. After Behan had given him his *Miranda* warnings, he explained the extent of the government's knowledge about Richardson's role in the conspiracy and stated that his car was subject to forfeiture. At several points, Richardson responded with a "yes." Behan concluded by suggesting that he talk to a lawyer about the possibility of cooperating with the government because if he did so he might "make it easy" on himself and possibly get probation.

The grand jury indicted all six persons involved in the transaction. Craddock pleaded guilty and became a cooperating witness for the government. Before trial, all of the defendants requested suppression hearings but the trial court refused to hold any. After trial the jury acquitted Machado-Leon and convicted all the other defendants on both counts. The judge sentenced Richardson and Reese to two concurrent ten-year sentences; Rafael Crespo-Diaz and Reinaldo Crespo-Diaz each received two consecutive ten-year sentences and the judge recommended that they be referred to the Immigration and Naturalization Service for possible deportation following completion of their sentences.

## I. Governmental Overreaching

Richardson and Reese claim that the fundamental fairness guarantee of the due process clause bars their convictions because the government used a highly improper relationship with the informer to produce evidence against them.[1] They allege that both the choice of investigative targets and the promise of payment after testimony at trial contributed to this impropriety.

■ The Constitution does place limits on the government's use of paid confidential informants. *United States v. Garcia*, 528 F.2d 580, 586 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1190 (1976); *Williamson v. United States*, 311 F.2d 441 (5th Cir.1962). Particularly when large fees are given to informers, such arrangements must be treated with suspicion. *United States v. Gray*, 626 F.2d 494, 499 (5th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980). Yet the government may, consistent with those constitutional limitations, pay for the services of a confidential informant, even on a case-by-case basis. Financial arrangements with informants normally will not violate the law if the government agents themselves do not select the person against whom the informant will direct his or her efforts and do not make the informant's payment contingent upon the conviction of a particular person. *United States v. Walker*, 720 F.2d 1527, 1539 (11th Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 1614, 80 L.Ed.2d 143 (1984).

■ The defendants allege that the government transgressed those limitations in this case. First, they claim that the agents selected them as targets by approving the informer's choice of investigative targets before they discussed the fee for the informer's services. The defendants find this improper because the agents did, in a sense, select who the informer would concentrate upon before making the financial arrangements. Yet the agents' decision is better described as an approval than as a selection. The informer brought up Richardson's name and the agents only gave him permission to pursue the matter. Such forms of approval are nearly inevitable in dealings with a paid informant. Because the agents did not actively select the target of investigation, this informant

---

**1.** The defendants denominate their claim as one of "entrapment as a matter of law." While there might be situations in which the uncontroverted evidence presented at trial establishes entrapment as a matter of law, *see Sherman v. United States*, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958), the defense here is more properly understood as governmental overreaching because the arrangements with the confidential informer do not establish as a matter of law the defendants' lack of predisposition.

was given no improper incentives to obtain a conviction against a particular person.

■ Neither is it critical that the informer anticipated further payment after completion of his testimony. Under *United States v. Gray*, 626 F.2d 494 (5th Cir.), *cert. denied*, 449 U.S. 1038, 101 S.Ct. 616, 66 L.Ed.2d 500 (1980), the testimony of an informant paid by contingent fee will not be rejected unless there is evidence that he or she was promised payment contingent upon the conviction of a particular person. In this case there was no evidence of a promise to pay the informant contingent upon the conviction of Richardson or Reese. The informant testified that he hoped to receive as much as 700 dollars but did not know the amount he might actually receive or, for that matter, whether he would be paid anything at all. *Cf. United States v. Valle-Ferrer*, 739 F.2d 545 (11th Cir.1984) (informant became aware several days before trial of his eligibility for award of $1,000 per convicted defendant); *United States v. Masri*, 547 F.2d 932, 937 (5th Cir.), *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977) (informant received unexpected payment after trial).

■ Finally, Richardson and Reese contend that, even if these identical contingent fee arrangements might be acceptable under some circumstances, the unsavory character of this particular informer should have prevented the government from giving him any financial incentive to fabricate incriminating testimony. They each presented evidence of prior drug use and dishonesty on the part of the informant. Nevertheless, the government cannot be expected to depend exclusively upon the virtuous in enforcing the law. So long as a reasonable jury could believe an informant's testimony after hearing relevant impeachment evidence regarding his or her reliability, the government may rely on such testimony. *See United States v. Valle-Ferrer*, 739 F.2d 545 (11th Cir.1984). The relationship between the government and the paid informant does not invalidate the convictions in this case.

## II. Evidence of Crimes Outside Scope of Indictment

Appellants Reese and Richardson objected to the introduction of two pieces of evidence relating to crimes not included within the indictment. The first was testimony by Garry Craddock, the co-conspirator who testified for the government, that he and Reese had purchased and distributed cocaine together several times in the past. Reese objected to the testimony and asked for a mistrial on that ground. The second piece of evidence was a taped conversation between Richardson and the informer discussing their small initial drug transaction. Richardson objected to the admission of this evidence of a past crime or wrong and Reese moved to sever his trial from Richardson's on the ground that the evidence against Richardson had prejudiced his defense.

### A. Craddock Testimony

■ Rule 404(b) of the Federal Rules of Evidence normally governs the admission of evidence of past crimes and wrongs. While it is possible that Craddock's testimony could qualify for admission under Rule 404(b), it actually falls outside the scope of the rule. Craddock testified that he contacted Reese after being asked to obtain a pound of cocaine because "I dealt through him before, buying cocaine." These prior wrongs were not "extrinsic" to the charged crimes because the evidence concerning prior crimes was inextricably intertwined with the evidence of the charged crime. It formed an "integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *United States v. Costa*, 691 F.2d 1358, 1361 (11th Cir.1982).

■ As in *Costa*, one co-conspirator in this case cooperated with the authorities and named another as his source of cocaine, citing previous cocaine dealings with Reese in order to explain why he had turned to Reese rather than some other person to obtain the cocaine. Rule 404(b) does not apply because the previous crimes had to be mentioned in order to present

adequately the evidence concerning the charged crime. The testimony would have been confusing and incomplete without mention of the prior acts. *See United States v. Kerris,* 748 F.2d 610 (11th Cir. 1984); *United States v. Males,* 715 F.2d 568 (11th Cir.1983); *United States v. Aleman,* 592 F.2d 881 (5th Cir.1979). It was therefore admissible so long as it meets the usual requirements for admissibility of evidence, contained in Fed.R.Evid. 401 and 403.

■ The fact that this evidence is inextricably intertwined with other admissible evidence establishes its relevance under Rule 401. Moving on to the comparison of probative and prejudicial effects of this evidence under Rule 403, the obvious similarity between the prior and charged offenses enhances its probity for proving why Craddock turned to Reese for the pound of cocaine. On the other side of the balance, Craddock's reference to prior cocaine deals with Reese consisted of one brief statement. The prosecutor did not ask any further questions about it and never referred to those incidents again. Finally, the court cautioned the jury before its deliberations that the defendants were on trial for the crimes charged and that evidence of past wrongs was relevant only in establishing the state of mind of the defendant. Given these facts, coupled with the broad discretion granted to trial courts in weighing prejudice and probity, *United States v. McMahon,* 592 F.2d 871, 873 (5th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2847, 61 L.Ed.2d 289 (1979), we conclude that the trial court committed no reversible error in permitting Craddock to testify as he did.

**B. Prior Transaction between Richardson and Informer**

■ In order to rebut Richardson's entrapment defense, the government attempted to prove his predisposition to commit this crime by presenting to the jury a taped conversation regarding an earlier sale of cocaine by Richardson. Richardson contends that these references to past wrongs on his part rendered the tape inadmissible. Under Fed.R.Evid. 404(b), evidence of past crimes or wrongs is admissible in order to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[2] In order to gain admission under this rule, evidence must meet two tests. It must be relevant to some issue other than "bad character" and its prejudicial value must not substantially outweigh its probative value. *United States v. Roe,* 670 F.2d 956, 967 (11th Cir. 1982), *cert. denied,* 459 U.S. 856, 103 S.Ct. 126, 74 L.Ed.2d 109 (1982); *United States v. Beechum,* 582 F.2d 898 (5th Cir.1978), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979).

■ The first test simply assures that the taped conversation contributes in some way to a legitimate purpose for introducing it. The government claims that this evidence was intended to show Richardson's knowledge of cocaine distribution and his pre-existing intent to possess and distribute cocaine as charged in the indictment. Because the tape was plainly relevant to the issues of knowledge and intent and because the prior act involved the same intent and knowledge at issue in the charged crimes, it qualifies under the first *Beechum* test.

**2.** There is a possibility that evidence of predisposition constitutes evidence of a pertinent trait of a defendant's character that the accused places into issue by making an entrapment defense, and therefore admissible under Rule 404(a)(1). *See United States v. Sonntag,* 684 F.2d 781, 787–88 (11th Cir.1982) (government's failure to produce evidence related to defendant's predisposition not a violation of discovery order covering all prior acts probative of knowledge or intent, a Rule 404(b) category, because predisposition evidence is admissible under Rule 404(a)(1)). Most courts, however, have analyzed the admissibility of predisposition evidence under Rule 404(b). *United States v. Moore,* 732 F.2d 983 (D.C.Cir.1984); *United States v. Jimenez,* 613 F.2d 1373 (5th Cir.1980); *United States v. Biggins,* 551 F.2d 64, 68 (5th Cir.1977). *See also United States v. Daniels,* 572 F.2d 535 (5th Cir.1978) (excluding predisposition evidence under Rule 403, no mention of Rule 404(b)). Because predisposition deals with a state of mind at a particular time and Rule 404(a)(1) deals with "character" in a more general sense, we resolve the question under Rule 404(b). *See United States v. Webster,* 649 F.2d 346, 350 (5th Cir.1981) (en banc) ("predisposition is a state of mind, not a character trait.").

*United States v. Braithwaite,* 709 F.2d 1450 (11th Cir.1983); *United States v. Mitchell,* 666 F.2d 1385, 1389 (11th Cir.), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2943, 73 L.Ed.2d 1340 (1982).

As for comparing the probative and prejudicial effects of this evidence, courts in this Circuit have focused on several specific factors such as the strength of the government's case on the issues of knowledge and intent, the overall similarity of the extrinsic and charged offenses, the amount of time separating them, and whether it appeared at the start of trial that the defendant would contest the issue of knowledge or intent. *United States v. Mitchell, supra.* Other aspects of the extrinsic offense have also proven significant in the "commonsense assessment" of prejudice and probity. *United States v. Beechum, supra,* at 914.

In this case there was a plain similarity between the extrinsic and charged offenses, yet the extrinsic wrong was not a heinous act that would have produced an irrational response from the jury. *United States v. Hewes,* 729 F.2d 1302, 1315 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). The government did not have overwhelming evidence of Richardson's predisposition to possess or distribute cocaine or of his knowledge about such matters, so the evidence had a relatively high incremental value and was not easily excludable. Further, the government had reason at the start of the trial to believe that Richardson would argue lack of intent because of his reliance on the entrapment defense. These circumstances establish the probity of the taped conversation more forcefully than they establish any possibility of prejudice. The trial court did not err in admitting this testimony against Richardson. *See also United States v. Tunsil,* 672 F.2d 879 (11th Cir.), *cert. denied,* 459 U.S. 850, 103 S.Ct. 110, 74 L.Ed.2d 98 (1982).

Since the first transaction between Richardson and the informant was not admissible as evidence against the other defendants, Reese claims that Fed.R.Crim.P. 8(a) mandated a severance of his trial from Richardson's trial so long as the government insisted on presenting that evidence. Rule 8(a), however, only governs the propriety of joinder of offenses at the indictment stage. No defendant was charged with the illegal transaction between Richardson and the informant, so joinder of offenses is not at issue here.

The only basis for Reese's claim is the failure to sever under Fed.R.Crim.P. 14. Under that rule, a defendant must show that the prejudicial evidence precluded the jury from independently assessing guilt as to each defendant. The grant or denial of a Rule 14 severance motion lies within the sound discretion of the trial court and a court abuses that discretion only when the movant suffers compelling prejudice. *United States v. Russell,* 703 F.2d 1243 (11th Cir.1983); *United States v. Berkowitz,* 662 F.2d 1127, 1132 (5th Cir. Unit B 1981).

In this case, the only possible source of prejudice to Reese was the material used to rebut a co-defendant's entrapment defense. Identical evidence was admitted under circumstances similar to this case in *United States v. Pirolli,* 742 F.2d 1382 (11th Cir.1984), where the testimony rebutting one co-defendant's entrapment defense did not necessitate severance. As in *Pirolli,* none of the attorneys suggested that Reese knew of the March transaction. The prosecution never alluded to the evidence as part of its case against Reese and the court instructed the jury to consider separately the evidence against each individual defendant. Reese's attorney stressed through cross-examination of government witnesses that Reese was not involved at all in the March transaction. The introduction of the tape therefore produced no compelling prejudice against Reese and the trial court did not abuse its discretion in refusing to grant the motion to sever.

## III. Admission of Tapes

Richardson objected at trial to the admission of all taped conversations between himself and the informer because

the prosecution allegedly had not established the proper predicate before introducing the tapes. The preferred practice in this Circuit is for the government to go forward with evidence regarding the competence of the tape machine operator, the fidelity of the equipment, the absence of any alterations to the tape and the identity of the speakers. *United States v. Biggins,* 551 F.2d 64 (5th Cir.1977). Nevertheless, the trial court has broad discretion to allow tapes into evidence without such a showing by the offering party so long as there is independent assurance of accuracy. *United States v. Shabazz,* 724 F.2d 1536 (11th Cir.1984); *United States v. Hughes,* 658 F.2d 317 (5th Cir. Unit B 1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982); *United States v. Greenfield,* 574 F.2d 305 (5th Cir.), *cert. denied,* 439 U.S. 860, 99 S.Ct. 178, 58 L.Ed.2d 168 (1978); *see United States v. Gorel,* 622 F.2d 100 (5th Cir.1979), *cert. denied,* 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980).

■ The government agent in this case testified about his extensive experience in operating tape recording devices and the regular maintenance performed on the recorders used by the DEA. He explained the procedures he used for recording and preserving the tapes and each of the relevant prosecution witnesses identified the speakers in the recordings. Hence, the government came forward with some evidence regarding the competence of the machine operator, the lack of any alterations to the tape and the identity of the speakers. It only lacked evidence regarding the fidelity of the particular machine in question. The government carried much of its burden under *Biggins* in this case.

**3.** Richardson also complains that the government never elicited testimony to the effect that the informer consented to the taping of his conversations; without consent, he says, these taped conversations could have violated 18 U.S.C.A. § 2511 (West 1970). *See United States v. Davanzo,* 699 F.2d 1097 (11th Cir.1983). However, the paid informer actively and knowingly participated in the recording and other efforts of the DEA and thereby voluntarily consented to the recording.

In addition, independent indicia of accuracy were available here. Agent Behan affirmed that the tapes contained an accurate rendition of the conversations he had heard. *See United States v. Hughes, supra.* The government established chain of custody. Furthermore, Richardson's attorney was able to cross-examine Behan thoroughly regarding his operation of the recorder. Since this independent evidence of accuracy existed to bolster the government's near-adequate showing under *Biggins,* the district court's decision to allow the tapes into evidence was not an abuse of discretion.[3]

## IV. Sufficiency of Evidence and Variance Between Indictment and Proof

■ Evidence will support a guilty verdict whenever a reasonable jury, choosing among reasonable constructions of the evidence, could have found that the defendant was guilty beyond a reasonable doubt. *United States v. Bell,* 678 F.2d 547 (5th Cir.1982) (Unit B en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983). Both Reese and Richardson challenge the sufficiency of the evidence supporting their convictions for possession with intent to distribute cocaine, while Richardson claims that the evidence was also insufficient to convict him of conspiracy to possess with intent to distribute cocaine. Richardson also complains of an alleged variance between the indictment and the proof at trial.

### A. Constructive Possession

■ While there was no evidence that either Reese or Richardson physically handled the cocaine, the conviction was still supported by adequate evidence so long as

Finally, Richardson challenges the admission of the tapes as a violation of Fed.R.Evid. 403. The tapes were the best evidence of the transactions in question and did not raise issues other than those inextricably intertwined with the acts charged in the indictment. The trial court therefore acted well within its discretion in admitting the tapes into evidence.

the evidence showed "constructive possession." In order to establish constructive possession, the government must prove that a person not in actual contact with the cocaine knew the identity of the substance and exercised dominion and control over it. *United States v. Ramos,* 666 F.2d 469 (11th Cir.1982); *United States v. Littrell,* 574 F.2d 828, 834–35 (5th Cir.1978).

■ There was ample evidence to convict Reese on a constructive possession theory. According to the informer, Reese told Rafael Crespo-Diaz to go outside the apartment and bring the cocaine inside. That was an indisputable exercise of dominion and control. The conversation in the room, in which Reese participated, indicated that Reese knew the identity of the substance. While it is true, as Reese says, that other witnesses contradicted the informer's account of who actually sent for the cocaine, the jury could have reasonably resolved the factual dispute in favor of the government. After conviction, the sufficiency of evidence is measured after all inferences and credibility choices have been resolved in favor of the government. *United States v. Morano,* 697 F.2d 923, 927 (11th Cir.1983); *United States v. Bell, supra.* The evidence supports Reese's conviction for possession with intent to distribute.

■ There is less direct evidence to suggest that Richardson ever exercised dominion and control over the cocaine. But Count II of the indictment charged Richardson with "aiding and abetting" in the possession of cocaine with intent to distribute, in violation of both 21 U.S.C.A. § 841(a) (West 1981) and 18 U.S.C.A. § 2 (West 1969). Hence, the government had only to show that he willfully associated himself with the enterprise to possess the cocaine and contributed to its success. *United States v. Payne,* 750 F.2d 844, 860 (11th Cir.1985); *United States v. Hewitt,* 663 F.2d 1381 (11th Cir.1981). Unlike the defendant in *United States v. Jackson,* 526 F.2d 1236 (5th Cir.1976), who was acquitted of possession charges because of insufficient evidence, Richardson did something beyond arranging a meeting between buyer and seller and learning about their plans. In a series of phone calls to the informer,

he attempted to make arrangements that would keep the cocaine and the money in separate locations at all times, fearing that he and his co-conspirators would lose possession of the cocaine before they received payment. That action could be construed by a reasonable juror as a material aid in the secure possession of the cocaine. In this regard, Richardson resembles the defendant in *United States v. Harris,* 713 F.2d 623, 627 (11th Cir.1983), whose conviction for possession of cocaine was supported by evidence that he had provided facilities for a meeting and acted as conduit between a willing buyer and a willing seller.

The evidence in this case would support a reasonable jury in the belief that Richardson was knowingly associated with a criminal venture to possess cocaine with intent to distribute and participated in it as something he wished to bring about. The evidence of possession was sufficient, therefore, to sustain the conviction.

**B. Conspiracy to Possess with Intent to Distribute**

■ Richardson also challenges the sufficiency of the evidence to convict him of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C.A. § 846 (West 1981). The evidence, he says, shows at most a buyer/seller relationship between himself and Craddock. There was no common design or purpose joining him with anyone other than government agents, for his plan was simply to buy a pound of cocaine from Craddock and resell it to the informer at a profit.

While this is one plausible construction of the evidence, it is also possible to conclude that Richardson and the other co-conspirators understood themselves to be involved together in a single venture. Craddock, Reese and the other co-conspirators did agree that they would receive $17,000 from Richardson, who would in turn receive $22,000 from the informer, yet those arrangements could be construed as a division of profits rather than a sale and resale. Craddock and Richardson both nego-

tiated with Behan regarding the method of transferring the money and the cocaine. There were no parallel negotiations regarding a transfer from Craddock to Richardson. Significantly, all of the co-defendants were present during the final transaction in the home of Reinaldo Crespo-Diaz and both Richardson and Reese participated actively. The jury, on the basis of these facts, could have found that Richardson and his co-defendants were involved in a single criminal venture even though they expected to participate in different ways and receive different amounts of the profits. The evidence of an agreement between Richardson and his co-defendants to violate the narcotics laws was sufficient to sustain Richardson's conspiracy conviction.

### C. Variance Between Indictment and Proof

In a related challenge, Richardson claims that the evidence at trial varied from the conspiracy as charged in the indictment. The indictment charged that the six co-defendants "did knowingly and willingly conspire, combine, confederate, cooperate, and agree together with persons whose names are to the Grand Jury known and unknown...." The evidence at trial focused on the conspiracy among the six named conspirators and never mentioned any other persons.

Richardson claims first of all that the indictment did not charge the named persons with conspiring with each other; rather, it charged each of them with conspiring with unnamed persons. This is an improbable reading of the indictment, however, because it says that the named persons agreed "together" with unnamed persons. This language implies an agreement between the named as well as the unnamed persons. In order for the indictment to mean what Richardson suggests, it would have to describe six separate conspiracies, which is an unlikely interpretation given that the indictment extends to only one date and one geographic area.

 Therefore, the proof at trial varied from the terms of the indictment only to the extent that it encompassed fewer conspirators than were included in the indictment. A variance mandates reversal only when it substantially prejudiced a defendant's rights. *Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Ard,* 731 F.2d 718, 725 (11th Cir.1984). The fact that proof at trial encompasses fewer conspirators than are named in the indictment does not normally cause any substantial prejudice to the defendant, because the existence of the conspiracy, rather than the identity of the conspirators, is the most important element in proving conspiracy and is the most important information to convey to the defendant. *United States v. Davis,* 679 F.2d 845, 851–52 (11th Cir.1982), *cert. denied,* 459 U.S. 1207, 103 S.Ct. 1198, 75 L.Ed.2d 441 (1983). Since the identity of the alleged conspirators was revealed in the indictment and the number of conspirators and the time and place of the conspiracy all fell within limits set forth in the indictment, *see United States v. Davis, supra,* the variance in this case does not constitute grounds for reversal.

### V. Admission of Products of Search

Each of the four appellants requested suppression hearings before trial. Reese, Rafael Crespo-Diaz and Reinaldo Crespo-Diaz all alleged that evidence obtained in the search of the house by the DEA agents was tainted and inadmissible. Richardson challenged the admission into evidence of a short list of phone numbers gained through a search of his person at the time of the arrest. The trial court refused to hold any evidentiary hearings apart from the trial and denied all of the motions to suppress.

 The trial court properly denied the requests of Richardson, Reese and Rafael Crespo-Diaz for suppression of evidence obtained during the search of the house because they never alleged an interest in the property sufficient to confer on them standing to challenge the legality of the search. No allegation of ownership or other legitimate expectation of privacy appeared in their motions to suppress or at trial. According to *United States v. Sneed,* 732 F.2d 886 (11th Cir.1984), a trial

court may refuse a defendant's request for a suppression hearing and motion to suppress if the defendant fails to allege facts that, if proved, would require the grant of relief. Most prominent among such allegations for the *Sneed* court was standing. Hence, the trial court did not err with regard to Richardson, Reese or Rafael Crespo-Diaz in refusing to exclude the evidence obtained during the search of the house or to hold a separate evidentiary hearing on this matter.

Each of these three defendants in their motions to suppress did allege standing to challenge the search of their persons. Yet allegations of standing alone will not suffice to obtain an evidentiary hearing or the suppression of evidence. A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. *United States v. Smith,* 546 F.2d 1275 (5th Cir.1977); *United States v. Poe,* 462 F.2d 195, 197 (5th Cir.1972), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973). In short, the motion must allege facts which, if proven, would provide a basis for relief. A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture, and the court has discretion in determining the need for a hearing. *United States v. Harrelson,* 705 F.2d 733 (5th Cir.1983). Once a defendant has failed to make a proper pretrial request for suppression, the opportunity is waived unless the district court grants relief for good cause shown.[4] Fed.R.Crim.P. 12(b)(3), 12(f).

These three defendants alleged, in connection with the search of their persons, that they were arrested without probable cause and without a search warrant.[5] Neither the motions nor the accompanying legal memoranda alleged any facts to support the contention that the government agents lacked probable cause to make the arrests. Two of the legal memoranda made the further allegation that certain property of the defendants (for Richardson, a wallet; for Reese, personal papers) was reduced to the exclusive control of the arresting officers, meaning that the officers were allegedly obliged to obtain a search warrant before inspecting the seized property. The memoranda cited *United States v. Johnson,* 588 F.2d 147 (5th Cir.1979), for this proposition. This second contention forms no basis for a hearing or suppression, however, because it is based on a mistaken reading of the *Johnson* case. *Johnson* involved luggage of an arrestee found in the trunk of the arrestee's automobile at the time of the arrest. The wallet and papers belonging to the defendants here were actually found on their persons during a valid search incident to an arrest. Such searches may properly extend to personal property such as a wallet found on the person of the arrestee. *United States v. Sonntag,* 684 F.2d 781 (11th Cir.1982); *United States v. Castro,* 596 F.2d 674 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 448, 62 L.Ed.2d 375 (1979).

Richardson, Reese and Rafael Crespo-Diaz therefore relied on a flawed legal theory and on a conclusory statement that the arrest was carried out without probable cause. They failed to make factual allegations which could form the basis for exclusion of evidence. Thus, the trial court properly exercised its discretion in refusing to grant the motions or to conduct an evidentiary hearing.

Reinaldo Crespo-Diaz likewise failed to present a legally sufficient motion to suppress. He did allege a possessory interest in the premises that were searched, an important fact in determining

---

**4.** The defendants never attempted to show good cause for their failure to make an adequate motion prior to trial.

**5.** The motions and accompanying memoranda also allege that the government agents searched the house based on information obtained through illegal surveillance and through a confidential informant. Assuming without deciding that these allegations would be sufficient to obtain an evidentiary hearing, they were made in connection with the search of the house rather than the search of the defendants. As already discussed, these defendants failed to allege standing to challenge the search of the house.

standing to assert Fourth Amendment claims. *See United States v. Garcia,* 741 F.2d 363, 365–66 (11th Cir.1984); *United States v. Rackley,* 742 F.2d 1266, 1270 (11th Cir.1983). Yet the motion stated little about the particulars of this search, mentioning only that the search was warrantless and without probable cause, that "unlawful and trespassory surveillance" occurred, and that his consent was not voluntary. The supporting memorandum of law recited the holdings of cases from several circuits describing exigent circumstances sufficient to justify a warrantless search; the memorandum never described the circumstances leading to entry of the house by the government agents in this case. Neither did it describe the scope of the search carried out by the agents or the circumstances of the "consent" alluded to in the motion. Given the nearly complete lack of factual allegations in the motion and supporting materials filed by Reinaldo Crespo-Diaz, the trial court did not abuse its discretion in denying the motion and refusing to hold an evidentiary hearing.

## VI. Post-arrest Statements

■ Richardson claims that the affirmations he made to Agent Behan after his arrest violated his constitutional rights as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court in this case denied Richardson's motion for an evidentiary hearing to determine the voluntariness of his statements to Agent Behan. We do not decide whether a request for a hearing to determine voluntariness of statements, like a request for a suppression hearing under the Fourth Amendment, must be requested in specific and non-conclusory terms, or whether Richardson made an adequate motion in this case. Nor do we address the issue of whether evidence at trial established the admissibility of the evidence and obviated the need for a hearing.[6] For even assuming that the trial court erred in admitting these post-arrest statements of Richardson, the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

The jury heard about Richardson's post-arrest statements through the testimony of Agent Behan, who described the discussion on the front lawn briefly and in abstract terms:

> Q. [by Assistant United States Attorney] What happened there sir? What did you say? What did he say?
> A. I started saying, "You know I know this about you on such and such a date." He said, "Yes, sir, that is true." I said, "on this date you did this, this and this." And he said, "Yes, that's true." "And on this date you used your Lincoln Continental, and now you are under arrest." Answer, "Yes, I did." I said, "You are in a real bad position." And I advised him—what I suggested to him was that he get with his lawyer as soon as possible and discuss with his lawyer his possible cooperation with the Government.

This rendition of Richardson's statements gave the jury little incriminating evidence. While Richardson affirmed that he had committed certain acts, the jury never knew whether those acts were legal or illegal. Neither could they ascertain whether the acts, if illegal, were the same acts charged in the indictment. Furthermore, Richardson relied at trial on the defense of entrapment and conspiring with government agents alone. Hence, he conceded that he had been involved in a drug transaction and contested only his criminal intent and his participation in the conspiracy as charged in the indictment. The

---

**6.** Neither do we decide whether the use of the post-arrest statements was improper under Fed. R.Crim.P. 11(e)(6). That rule makes inadmissible "any statement made in connection with any offer to plead guilty or nolo contendere to the charged crime or any crime." According to *United States v. Herman,* 544 F.2d 791 (5th Cir. 1977), statements are inadmissible if made at any point during a discussion in which the defendant seeks to obtain concessions from the government in return for a plea. Richardson made his statements close to the time when Agent Behan urged him to make it easy on himself by cooperating. Because we find that the introduction of Richardson's statements was harmless error, we do not address the admissibility of his statements under this rationale.

post-arrest statements of Richardson did not tend to establish any contested issue of fact and the government did not benefit from its introduction in this abstract form. The admission of the statements was, therefore, not capable of undermining any existing reasonable doubt and was harmless error.

## VII. Jury Instructions

■■■ Two appellants challenge the trial court's failure to give jury instructions as requested. Richardson challenges the court's refusal to give his "theory of defense" charge, which stated that one cannot illegally conspire with government agents and set forth the doctrine of entrapment. Reese claims that the court failed to read a proffered instruction regarding his right not to testify. A trial court's refusal to give a requested instruction warrants reversal only if the proffered instruction is substantially correct, is not actually addressed by the court's instructions, and is important to the defense. *United States v. Walker*, 720 F.2d 1527, 1540–41 (11th Cir. 1983).

### A. Theory of the Defense

■■■ The instruction requested by Richardson regarding conspiracy with government agents and entrapment was substantially correct and important to his defense. The government asserts, however, that the trial judge did address each of these topics even though he did not employ Richardson's precise formulations. Our review of the record confirms that the trial court properly instructed the jury regarding these matters.[7] The fact that the two possible defenses were not discussed together and were not attributed to Richardson in the court's instructions does not demon-strate any failure by the court to address the matters covered by the proffered instruction. Closing arguments of counsel will suffice to identify which defendants rely on which defenses. The court acted within its discretion in rejecting Richardson's "theory of the defense" instruction.

### B. Right Not to Testify

■■■ Both Reese and Nancy Machado-Leon declined to testify at trial, and each of them submitted instructions reminding the jury that no adverse inference could be drawn from their refusal. The court used Machado-Leon's submission, which referred to the defendant as "she" and "her" on five occasions,[8] and did not use the nearly identical submission of Reese. Reese now claims that because the instruction used the feminine gender, the jury might have drawn adverse conclusions from his refusal to testify because they were reminded only of the rights of Machado-Leon.

The jury must be told to draw no adverse inference from a refusal to testify; defendants may have that instruction as of right. *Carter v. Kentucky*, 450 U.S. 288, 301, 101 S.Ct. 1112, 1119, 67 L.Ed.2d 241 (1981). But as long as the jury is told at the proper time not to draw adverse inferences from any defendant's refusal to testify, the function of the instruction is served; the court need not explicitly instruct the jury that each of the defendants has the same right. The charge rendered by the trial court did not imply that Machado-Leon had any rights not possessed by Reese, and the jury was not likely to believe such an outlandish proposition. Indeed, the charge referred several times in the abstract to "a defend-

---

**7.** The court informed the jury that "There can be no conspiracy involving only the Defendant and Government agents and informers because it takes two to conspire, and the Government agent or Government informer is not a true conspirator." The court also gave a page-long charge regarding entrapment.

**8.** The court instructed the jury as follows:
It is the Constitutional right of a Defendant in a criminal trial that she may not be compelled to testify. The decision as to whether she should testify is left to the Defendant acting on the advice and assistance of her attorney. You must not draw any inference of guilt from the fact she does not testify, and this fact must not be discussed by you or enter into your deliberations in any way. In deciding whether or not to testify a Defendant may choose to rely on the state of the evidence or upon the failure, if any, of the Prosecution to prove every essential element of the charge against her.

ant." Under these circumstances, the use of feminine language in the instruction was not error.

## VIII. Sentencing

■ The judgment and commitment orders entered by the court against Reinaldo and Rafael Crespo-Diaz stated that "It Is Further Recommended that after completion of the above sentences defendant be referred to the Immigration and Naturalization Service for possible deportation." Both Reinaldo and Rafael Crespo-Diaz contend that this recommendation constituted a part of the sentence not within the statutory limits of 21 U.S.C.A. § 841(b)(1)(A) (West 1981), and therefore should be vacated by this Court.

The trial court did not enter an order of deportation or recommend deportation; it merely recommended that the appellants be referred to the INS for possible deportation according to law. Persons convicted of violations of narcotics laws may be subject to deportation, even if the trial court makes no recommendation at all. 8 U.S.C.A. § 1251(a)(11) (West 1970). Hence, the trial court did not act improperly or impose on the appellants a sentence beyond the statutory confines, and this Court will not vacate the sentences. *Nelson v. United States*, 709 F.2d 39, 40 (11th Cir.1983).

## IX. Conclusion

None of the appellants have established the existence of any reversible error in the trial below. Accordingly, the judgments of conviction entered against the appellants by the district court are AFFIRMED.