[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14733
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 14, 2011
JOHN LEY
CLERK

D. C. Docket No. 97-00687-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JEAN ROBERT-MARIO LAZARRE, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 14, 2011)

Before EDMONDSON, BLACK, and PRYOR, Circuit Judges.

PER CURIAM:

Jean Robert-Mario Lazarre, Jr. appeals his drug conspiracy and drug possession with intent to distribute convictions, 21 U.S.C. §§ 841(a)(1), 846.[1] No reversible error has been shown; we affirm.

On appeal, Lazarre argues that the admission of three pieces of evidence violated Fed.R.Evid. 404(b) because they showed only his prior bad acts: (1) a witness's testimony that he thought the substance discovered in a brick-shaped object[2] was cocaine because it caused his mouth to become numb; (2) a fingerprint card taken of Lazarre in the Dominican Republic where he had used an alias; and (3) testimony by Pascal Garoute about a drug smuggling route (that Lazarre's father had used) offered to him by Lazarre to transport drugs. We review a district court's evidentiary rulings for an abuse of discretion. United States v. Eckhardt, 466 F.3d 938, 946 (11th Cir. 2006).

Under Rule 404(b), extrinsic evidence of other crimes is not admissible to

---

[1]Lazarre also was convicted of money-laundering conspiracy, 18 U.S.C. § 1956(h). But on appeal, Lazarre makes no challenges to this conviction.

[2]The witness, who was the brother of Lazarre's girlfriend, testified about an event that occurred at his mother's house where his mother discovered a wrapped, brick-shaped object in a vase. The witness confronted Lazarre about the object, saying that he believed the brick was cocaine. Lazarre denied that it was cocaine. The witness tasted the contents of the brick and said that it had a numbing sensation. The witness had testified that, based on a drug training program he had participated in, he knew that cocaine produced a numbing sensation.

2

show proof of bad character. But it may be admissible to prove other things, including motive, knowledge, or intent as long as the evidence is relevant to an issue other than defendant's character and the risk of undue prejudice from the evidence does not outweigh substantially its probative value. See Fed.R.Evid. 404(b); see also Fed.R.Evid. 403. Evidence of uncharged crimes is not extrinsic under Rule 404(b) if it is, among other things, inextricably intertwined with the evidence about the charged offense. United States v. Ellisor, 522 F.3d 1255, 1269 (11th Cir. 2008).

We will reverse an erroneous evidentiary ruling only if it was harmful: that "there is a reasonable likelihood that [the error] affected the defendant's substantial rights." United States v. Hawkins, 905 F.2d 1489, 1493 (11th Cir. 1990). We conclude that, even if the testimony about the single brick believed to be cocaine belonging to Lazarre was inadmissible Rule 404(b) evidence, its admission was not harmful to Lazarre. Evidence showed that Lazarre sold between 10 and 40 kilograms of cocaine to Keenen Paicely, the government's chief witness, between 100 and 150 times. This evidence showed sufficiently that Lazarre possessed with intent to distribute five kilograms or more of cocaine, as charged in the indictment; and evidence showing that he arguably possessed one kilogram of cocaine did not affect Lazarre's substantial rights. See id. (explaining that reversal is not

3

warranted where an error had no substantial influence on the outcome, and sufficient evidence uninfected by error supports the verdict).

The fingerprint card was not introduced, as Lazarre asserts, to show that he had a prior drug arrest; but it was admitted to substantiate witness testimony that Lazarre had fled the United States to Haiti or the Dominican Republic after the conspiracy ended. Lazarre stipulated that his fingerprints were "taken by law enforcement officers of the Dominican Republic," and the district court explained to the jury that the fingerprint card did not relate to any arrest by the Drug Enforcement Administration. So, the fingerprint card was not Rule 404(b) evidence; and the court abused no discretion in admitting it.[3]

Lazarre says the evidence about his father's drug smuggling route shows a different, uncharged conspiracy. He also argues that this evidence caused an impermissible amendment to the indictment because the proof at trial differed so substantially from the drug conspiracy charged in the indictment and varied materially from the indictment such that he was unable to defend fairly against the drug conspiracy charge.

_____

[3]Given his stipulation, Lazarre's present argument that admission of the card constituted reversible error is invited error. See United States v. Jernigan, 341 F.3d 1273, 1289-90 (11th Cir. 2003) (concluding that defendant whose counsel had affirmatively stipulated to the playing of a tape-recorded statement had invited any error resulting from the jury's hearing the tape and, thus, any error was not reversible).

4

Constructive amendment of the indictment is per se reversible error and occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." United States v. Narog, 372 F.3d 1243, 1247 (11th Cir. 2004) (citation omitted). "A material variance between an indictment and the government's proof at trial occurs if the government proves multiple conspiracies under an indictment alleging only a single conspiracy." United States v. Alred, 144 F.3d 1405, 1414 (11th Cir. 1998) (citation and quotations omitted).

The indictment charged that Lazarre, along with seven named co-conspirators, conspired with "each other and with other persons known and unknown to the Grand Jury," to possess with intent to distribute five kilograms or more of cocaine. The indictment also alleged that the conspiracy began as early as 1988 and ended in May 1999 and occurred in the Southern District of Florida and elsewhere.

Garoute's testimony that, in 1996, Lazarre offered him a drug route that Lazarre's father earlier had used was consistent with the time frame of the charged conspiracy and showed a conspiracy agreement between Lazarre and Garoute to import and then to distribute cocaine. In addition, Lazarre's importation and distribution of five kilograms of cocaine for Garoute using this route was

inextricably intertwined with the instant conspiracy to import cocaine from Haiti to the United States, and then to distribute the cocaine within the United States. See United States v. Richardson, 764 F.2d 1514, 1521-22 (11th Cir. 1985) (concluding that prior uncharged narcotics dealings between a defendant and a cooperating witness are admissible as intrinsic evidence where the evidence about the prior crime inextricably is intertwined with the evidence of the charged drug offense).

Based on this trial evidence, Lazarre also has shown no constructive amendment to or material variance from the drug conspiracy charge. That Garoute was not named specifically in the indictment does not alter an essential element of the conspiracy because the indictment also included "other persons known and unknown" and an agreement between Garoute and Lazarre was plain from the evidence. See United States v. Keller, 916 F.2d 628, 634 (11th Cir. 1990) (quotation and citation omitted) (when a defendant is charged with conspiracy, "[t]he general rule is that the existence of the conspiracy agreement rather than the identity of those who agree is the essential element to prove conspiracy").

And Lazarre's argument that the drug smuggling route evidenced multiple, uncharged conspiracies is unavailing. "[T]he arguable existence of multiple conspiracies does not constitute a material variance from the indictment if, viewing the evidence in the light most favorable to the government, a reasonable trier of

fact could have found that a single conspiracy existed beyond a reasonable doubt." Alred, 144 F.3d at 1414. "In finding a single conspiracy, there is no requirement that each conspirator participated in every transaction, knew the other conspirators, or knew the details of each venture making up the conspiracy." United States v. Taylor, 17 F.3d 333, 337 (11th Cir. 1994). Based on the evidence presented at trial -- including that Garoute had delivered cocaine to a named conspirator and worked with Lazarre to import five kilograms of cocaine from Haiti to the United States -- "a reasonable trier of fact could have found that a single conspiracy existed beyond a reasonable doubt." Alred, 144 F.3d at 1414.

AFFIRMED.