[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11043

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DARREN J. MCCORMICK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:20-cr-00035-WLS-TQL-1

_____

Before LUCK, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Darren McCormick appeals his conviction for possession with intent to distribute over fifty grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii). After careful review of the record and the parties' briefs, we affirm McCormick's conviction.

## I.    FACTUAL BACKGROUND

### A.    Michael Husbands

In October 2019, Michael Husbands was arrested for possession with intent to distribute illegal drugs. After his arrest, Husbands gave an interview about his work for Darren McCormick. Husbands lived in Nashville, Georgia. Husbands made a deal with the Alapaha Circuit district attorney, who agreed to let Husbands post bond in exchange for his assistance in investigating McCormick.

Husbands had a close relationship with McCormick, who paid Husbands to assist McCormick with various tasks starting in 2018. These tasks included delivering drugs for McCormick and giving McCormick rides to the store and other places. By

Husbands's estimate, he made 30 to 40 drug deliveries for McCormick.

## B.    The Investigation of McCormick

In 2020, the Berrien County Narcotics Office ("BCNO"), which was investigating McCormick, used Husbands as an informant.

Following his release from jail, Husbands returned to working for McCormick, who asked Husbands if packages could be delivered to Husbands's residence in Nashville, Georgia. Husbands contacted the district attorney's investigators about McCormick's request.    Then, Husbands agreed to receive McCormick's packages at Husbands's Nashville address.

## C.    McCormick's Packages Sent to Husbands's Residence

Two packages were delivered to Husbands's address.  When the first package arrived, McCormick asked Husbands to open it. The first package contained marijuana.    The investigators instructed Husbands to "let it go through" to McCormick.

McCormick later told Husbands to watch out for another package that would arrive in the next few days at his Nashville address.  Husbands informed the investigators that McCormick was expecting a second package.    The package then was intercepted by a U.S. Postal Inspector in Tallahassee and taken by that inspector to the post office in Nashville, Georgia.

## D.     The May 8, 2020 Package

On May 8, 2020, after a law enforcement agent informed Husbands that the second package had arrived, Husbands picked up the package at the post office in Nashville.  The package had been sent to an indecipherable name at Husbands's Nashville address.  When Husbands returned home, he suggested to the investigators that the package be stored in a shed in his backyard.  However, BCNO Agent Hines Taylor instructed Husbands to place the package in the trunk of Husbands's car for safekeeping.

On that same day (May 8), Husbands informed McCormick that the package had arrived in the mail.  Husbands led McCormick to believe the package was in Husbands's shed, where Husbands had held packages for McCormick on other occasions.

When Husbands talked with McCormick about the package, Husbands learned McCormick might need a ride from Douglas, Georgia, to Nashville.  Husbands then offered McCormick a ride, which McCormick accepted.  McCormick did not ask Husbands to bring the package, and Husbands did not tell McCormick the drug package was in the car.

After Husbands informed the investigators that McCormick needed a ride, Agent Taylor directed Husbands to pick McCormick up and provided Husbands with a recording device that recorded Husbands's conversations.

### E.    McCormick's Recorded Conversation with Husbands on May 8, 2020

Later the same day (May 8), Husbands picked up McCormick in Douglas, Georgia. McCormick's conversation with Husbands on this trip was recorded by the agents and played for the jury.

Soon after McCormick entered the car, he asked Husbands, "You put it up good, didn't you?" Husbands responded, "Yeah. I got it put up. I know better than that." Husbands testified that, during this exchange, McCormick was referring to the package that came in the mail.

McCormick also said, "Told my boy I don't know how the f*** I'm gone sell this dope but I told em um sh*t cost a lot of f***ing money you know what I am saying $600 you hear me Unc?" and "My a** gonna make a lot of money off this sh*t cause um we gonna be havers not have nots." McCormick then described the purity of the methamphetamine, stating, "It's real ice you feel me." Husbands testified that "ice" refers to the purest form of methamphetamine.

During the recorded conversation, McCormick detailed his plans to "cut" and otherwise prepare the drugs for sale so that he could preserve the purity needed to make a profit. McCormick and Husbands discussed the prices they could get for different quantities of the drugs, including a gram, a "zip" (one ounce), and an "8 ball" (3.5 grams or an eighth of an ounce). McCormick told Husbands, "This first round right here we grinding this

mother***er," which Husbands understood to mean that McCormick planned to sell the drugs as quickly as possible.

On the way back from Douglas, Husbands's car was stopped, and the package in the trunk was seized. Law enforcement later confirmed that: (1) the package contained two substances; (2) the first substance weighed 6.971 grams and contained 47.8 percent pure methamphetamine; and (3) the second substance weighed 215.115 grams and contained 47.8 percent pure methamphetamine.

## F.    Indictment and Trial

In 2020, McCormick was charged with possession with intent to distribute methamphetamine weighing in excess of fifty grams, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(viii) (Count 1).

During the three-day trial, the government presented testimony from Husbands and several law enforcement officers, as well as other evidence, including audio recordings, that established the facts recounted above. At the close of the government's evidence, McCormick moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The district court reserved ruling on the motion.

The jury found McCormick guilty of the charged drug offense. The district court denied McCormick's motion for judgment of acquittal. Ultimately, the district court sentenced McCormick to 195 months' imprisonment.

## II.    SUFFICENCY OF THE EVIDENCE

To convict a defendant under § 841(a) of possession with intent to distribute, the government must prove the defendant (1) knowingly (2) possessed a controlled substance, and (3) with intent to distribute it. *United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013).

"Possession may be actual or constructive, joint or sole." *United States v. Woodard*, 531 F.3d 1352, 1360 (11th Cir. 2008) (quotation marks omitted). This case involves only constructive possession.

To establish constructive possession, the government must demonstrate that the defendant (1) "knew the identity of the substance," and (2) owned it or exercised dominion and control over it. *United States v. Richardson*, 764 F.2d 1514, 1525 (11th Cir. 1985); *see also Capers*, 708 F.3d at 1306 ("To prove constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband . . . ." (quotation marks omitted)); *Woodard*, 531 F.3d at 1360 ("A defendant's constructive possession of a substance can be proven by a showing of ownership or dominion and control over the drugs . . . ." (quotation marks omitted)). "'[C]onstructive possession' of a thing occurs if a person doesn't have actual possession of it, but has both the power and the intention to take control over it later." *Capers*, 708 F.3d at 1297 (quoting *United States v. Cochran*, 683 F.3d 1314, 1316 (11th Cir. 2012)). "Constructive possession need not be exclusive, and may be

proven through circumstantial evidence that shows ownership, dominion, or control over the drugs[.]" *Holmes v. Kucynda*, 321 F.3d 1069, 1080 (11th Cir. 2003) (citing *United States v. Poole,* 878 F.2d 1389, 1392 (11th Cir. 1989)).

Here, there was ample evidence to convict McCormick on a constructive possession theory. The evidence showed that: (1) McCormick had knowledge that the package delivered to Husbands on May 8, 2020 contained methamphetamine; (2) McCormick both owned the drug package and had the ability and intent to exercise control over the drugs; and (3) McCormick had the intent to distribute them.[1] As to the knowledge element of § 841(a), there was more than sufficient evidence that McCormick knew the package contained methamphetamine. McCormick asked Husbands if packages could be delivered to Husbands's address and told Husbands to watch out for the package a couple of days before it arrived. Then, on May 8, 2020, McCormick asked if Husbands had "put it up good," to confirm that Husbands had hidden the drugs in a safe location. In the same conversation with Husbands, McCormick (1) described the purity of the methamphetamine, (2) detailed his plans to prepare the methamphetamine for sale, (3) discussed the prices he could get for

---

[1] This Court reviews de novo the sufficiency of the evidence to support a conviction, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict. *United States v. Dixon*, 901 F.3d 1322, 1335 (11th Cir. 2018).

different quantities of drugs, and (4) indicated that he planned to sell the drugs quickly. These facts clearly support the jury's finding that McCormick knew the package contained methamphetamine.

The same facts show that McCormick both owned the package and had the ability and intent to exercise control over the methamphetamine. Because McCormick asked Husbands if packages could be delivered to Husbands's address and later told Husbands to watch out for the package shortly before it arrived, a reasonable jury readily could find that McCormick owned the package and arranged for this package to be sent to Husbands's address. As noted above, McCormick later told Husbands about his plans to sell the methamphetamine during their recorded conversation on May 8, 2020. This evidence, taken together, allowed the jury to conclude that McCormick exercised dominion and control over the drugs, which in turn allowed the jury to infer he constructively possessed the drugs. *See Woodard*, 531 F.3d at 1361 (concluding that sufficient evidence showed the defendant constructively possessed marijuana when he told a co-conspirator that he planned to sell the marijuana once it arrived in the mail).

Turning to § 841(a)'s third element (intent to distribute), McCormick's recorded statements about his plans to sell the drugs clearly demonstrated his intent to distribute the methamphetamine. Accordingly, the evidence was more than sufficient to convict McCormick of possession with intent to distribute methamphetamine.

McCormick argues that he was a mere passenger in Husbands's car and had no knowledge that there were drugs hidden in the truck. McCormick stresses that Husbands did not tell him drugs were in the truck. Even so, this argument is beside the point here. First, this is not a case where the government seeks to show constructive possession by a defendant's presence in a vehicle or house where drugs are found during a search. Rather this case is about ownership of a drug package sent through the mail to a designated location during a specific time period. To establish constructive possession in that situation, the government needed to prove only that: (1) McCormick knew the package contained methamphetamine and (2) he owned the drug package or had dominion and control over it. See Richardson, 764 F.2d at 1525; Capers, 708 F.3d at 1306. The evidence recited above proved a strong ownership nexus between McCormick and the methamphetamine that he constructively possessed. That McCormick did not know the drugs were hidden in the car trunk, not Husbands's shed, does not negate the force of the other evidence that McCormick owned the methamphetamine and intended to sell it.

McCormick also argues that the evidence was insufficient to support his conviction because there were no circumstances evidencing his "consciousness of guilt." See United States v. Stanley, 24 F.3d 1314, 1320–21 (11th Cir. 1994) (concluding that the evidence was insufficient to sustain a defendant's § 841(a) conviction when: (1) she was a passenger in a vehicle where drugs

were hidden, and (2) there were no "circumstances evidencing a consciousness of guilt," such as evidence that she made incriminating statements). We disagree. McCormick's incriminating statements during his recorded conversation with Husbands proved that he knew the package contained methamphetamine.

In sum, we conclude sufficient evidence supported McCormick's conviction for possession with intent to distribute methamphetamine.

**AFFIRMED.**