**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Tanfield C. MILLER and Helen A. Miller, Defendants–Appellees.**

**No. 92–5026.**

United States Court of Appeals, Eleventh Circuit.

July 6, 1994.

Roberto Martinez, U.S. Atty., Frank H. Tamen, Linda Collins Hertz, Barbara A. Ward, Asst. U.S. Attys., Miami, FL, for plaintiff-appellant.

E. David Rosen, Rosen Law Offices, P.A., Miami, FL, for defendants-appellees.

Before COX and BIRCH, Circuit Judges, and SMITH *, Senior Circuit Judge.

EDWARD S. SMITH, Senior Circuit Judge:

On 27 February 1992, appellees Tanfield and Helen Miller were indicted for violating the federal arson statute, 18 U.S.C. § 844(i), in the destruction by fire of a building that housed their business, T.C. Miller & Company (TCM). On 11 August 1992, the United States District Court for the Southern District of Florida, Fort Lauderdale Division, No. 92–6027–CR–Paine, granted appellees' motion to suppress evidence obtained and to return property seized by the Government via an allegedly defective search warrant. On 29 September 1992, the district court denied the Government's motion for reconsideration of the court's order granting appellees' suppression motion. Pursuant to 18 U.S.C. § 3731, the Government appeals the district court's grant of the appellees' suppression motion. We reverse.

### Issues

The Government contends that the district court erred as a matter of law in suppressing the evidence based on the court's conclusion that, because a sufficient factual basis was not asserted to establish that the property destroyed in the arson was involved in an activity affecting interstate commerce, the affidavit supporting the search warrant failed to state probable cause of a federal crime.

* Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

The Government further contends that the district court erred in concluding that the exclusionary rule's good faith exception was inapplicable because the alleged defect in the affidavit was jurisdictional and in suggesting that the magnitude of the probable cause deficiency precluded good faith reliance.

Appellees contend that the affidavit in support of the search warrant failed to allege jurisdiction as required by the federal arson statute in that the affidavit did not provide a sufficient factual basis to conclude that property damaged in the arson was used in an activity affecting interstate or foreign commerce and that, therefore, violation of a federal law had occurred; further, that the Government failed to meet its burden of establishing that the search warrant was not so facially deficient that the executing officers could not rely in good faith on its validity and that, therefore, the district court did not err in suppressing the improperly procured evidence.

*Facts*

The facts were essentially fully stipulated, and those pertinent to the appeal are as follows:

On 25 September 1988, the building housing appellees' business was destroyed by fire of suspicious origin. On 25 October 1990, a special agent with the Bureau of Alcohol, Tobacco and Firearms executed an Application and Affidavit for Search Warrant before a United States magistrate for a warrant to search the business premises to which TCM had relocated. The search warrant affidavit asserted that TCM was an "accounting/investment entity owned, operated and controlled" by appellee Tanfield Miller, that investigation had determined that arson was the cause of the fire, and that State Farm Insurance had denied TCM's insurance claims based on the determination of arson. The affidavit further asserted that employees of TCM had seen, at the company's new office, a number of personal items belonging to appellees and business-related items that had been considered permanent fixtures at the company's former location and that should have been destroyed or severely damaged in the fire, but were not. These items

included specified personal photographs of the appellees, a cigarette lighter, an office photograph album, a corporate record book, and property appraisal books. The affidavit also related that the items that had reappeared at TCM's new office were of the type that one, who had prior knowledge of a fire, would want to remove from the premises beforehand. After noting that the federal arson statute, 18 U.S.C. § 844(i), prohibited the malicious destruction, by means of fire or explosion, of property used in interstate or foreign commerce, the affidavit finally asserted that the items of personal property belonging to the appellees that had been seen in the new TCM building and that should have been destroyed in the fire established probable cause to believe that evidence of a violation of the federal arson statute might be found at TCM's new premises. Satisfied that the affidavit's contents established the requisite probable cause, the magistrate immediately issued the search warrant, and it was executed the same day, yielding a number of personal property items belonging to the appellees.

On 27 February 1992, appellees were indicted for violating section 844(i). On 14 July 1992, appellees moved to suppress the evidence seized under the search warrant by asserting that the search warrant affidavit failed to state probable cause of a federal offense inasmuch as the affidavit did not establish that the property destroyed by the arson was used in interstate or foreign commerce or in any activity affecting such commerce. The Government failed to timely file a memorandum in opposition to appellees' motion to suppress, as required by the local rules of the Southern District of Florida, and on 11 August 1992 the district court granted appellees' motion to suppress by default. In also granting the suppression motion on the merits, the district court relied on the former Fifth Circuit's holding in *United States v. Brouillette*, 478 F.2d 1171 (5th Cir.1973), and concluded that "mere recitation of the federal arson statute does not provide the necessary nexus to interstate commerce" and that, "because the Search Warrant Affidavit lacked any specific factual allegation concerning interstate commerce," the evidence seized via

the search warrant not only must be suppressed but also must be returned to appellees.

On 1 September 1992, the Government moved the district court to reconsider its order granting appellees' suppression motion and asked the court not only to excuse its earlier failure to timely file a written opposition by setting aside the default but also to revisit its order on the merits. In addition to arguing that the search warrant affidavit did provide the magistrate with a factual basis upon which to conclude that property destroyed in the arson affected interstate commerce, the Government alternatively asserted that, alleged defects in the affidavit notwithstanding, any such deficiencies were not so substantial as to preclude application of the exclusionary rule's good faith exception.

Appellees responded by asserting that the magistrate was without authority to issue the warrant but did not otherwise object to the reconsideration motion. Although finding that the Government's explanations for its failure to oppose the motion did not rise to the level of good cause or excusable neglect, the district court nevertheless agreed to address the merits of appellees' suppression motion and its order to grant said motion "due to the importance of the Motion to Suppress, and the Government's representation that Defendants do not oppose reconsideration." In denying the motion for reconsideration on the merits, the district court reasoned that the search warrant affidavit's failure to assert sufficient probable cause for an interstate commerce nexus rendered the warrant improper for lack of federal jurisdiction. Furthermore, the court concluded that, because the magistrate lacked jurisdiction in issuing the warrant, law enforcement officers executing the warrant could not reasonably rely on its legitimacy and, therefore, that the exclusionary rule's good faith exception was inapplicable. This appeal followed.

*Standard of Review*

■ Whether the search warrant affidavit in this case offers sufficient facts to establish probable cause of a federal crime is a question of law, *United States v. Tobin,* 923 F.2d 1506, 1510 (11th Cir.) (en banc) (citing *United States v. Hurtado,* 779 F.2d 1467, 1477 (11th Cir.1985)), *cert. denied,* —— U.S. ——, 112 S.Ct. 299, 116 L.Ed.2d 243 (1991), and therefore is subject to complete and independent review by this court. *In re Sure–Snap Corp.,* 983 F.2d 1015, 1017 (11th Cir.1993).

*Probable Cause*

■ Because we agree with the Government's contention that the search warrant affidavit asserted sufficient facts from which probable cause of a federal crime reasonably could be concluded by the magistrate and because we believe this determination to be dispositive of the issues on appeal in this case, we find it unnecessary to reach the merits of either the Government's good faith exception argument or the district court's foreclosure of this argument on jurisdictional grounds. Additionally, we do not address that portion of the district court's order granting appellees' suppression motion by default; we construe the district court's willingness, in its denial of appellant's reconsideration motion, to consider the merits of the suppression motion, "due to the importance of the Motion to Suppress and ... [because] the Defendants [did] not oppose reconsideration," as essentially rendering moot the default issue. Neither party addressed the default issue in submitted briefs; consequently, the issue is not before us on appeal.

■ We begin our analysis of the probable cause issue by briefly examining Congress' intent concerning the interstate or foreign commerce nexus required for conviction under 18 U.S.C. § 844(i).[1] Section 844(i) was passed as part of Title XI of the Organized Crime Control Act of 1970, Pub.L. No. 91–452, 84 Stat. 922. Floor debates on the final bill, which ultimately culminated in the Act,

---

1. Section 844(i) provides, in pertinent part, that "[w]hoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other *real or personal property used in interstate or*

*foreign commerce or in any activity affecting interstate or foreign commerce* shall be imprisoned ... or fined ..., or both." 18 U.S.C. § 844(i) (1988) (emphasis added).

included several statements on the intended scope of section 844(i). "[T]he [House Judiciary C]ommittee extended the provision protecting interstate and foreign commerce from the malicious use of explosives to the full extent of our constitutional power." 116 Cong.Rec. 35198 (1970) (statement of Rep. McCullough). "The reach of the [Act] . . . is greatly extended by making it unlawful to damage or destroy property which is used in or affects interstate commerce. Nearly all types of property will now be protected by the [Act]." 116 Cong.Rec. 37187 (1970) (statement of Rep. MacGregor). The House Judiciary Committee's final report on the bill stated that "[s]ince the term affecting [interstate or foreign] 'commerce' [as found in section 844(i) ] represents 'the fullest jurisdictional breadth constitutionally permissible under the Commerce Clause,' this is a very broad provision covering substantially all business property." H.R.Rep. No. 1549, 91st Cong., 2d Sess. 70 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4046 (second alteration in original) (citation omitted) (quoting *NLRB v. Reliance Fuel Oil Corp.*, 371 U.S. 224, 226, 83 S.Ct. 312, 313–14, 9 L.Ed.2d 279 (1963)).

In construing the coverage of section 844(i) to include a two-unit apartment building that was used as rental property in *Russell v. United States*, 471 U.S. 858, 105 S.Ct. 2455, 85 L.Ed.2d 829 (1985), the Supreme Court noted that "[t]he legislative history [of section 844(i) ] indicates that Congress intended to exercise its full power to protect 'business property.' " *Id.* at 860, 105 S.Ct. at 2456. The Court further stated that "the legislative history suggests that Congress at least intended to protect all business property" by enacting section 844(i) and that "the statute only applies to property that is 'used' in an 'activity' that affects commerce." *Id.* at 862, 105 S.Ct. at 2457. The legislative history of section 844(i) and the Supreme Court's interpretation of that history in *Russell* clearly establish that the "real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce" language of section 844(i) necessarily encompasses any property involved in commercial activity.

In attempting to ensure that search warrant affidavits comply with the Fourth Amendment's prohibition against unreasonable searches and seizures resultant from warrants issued without probable cause, the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Id.* at 241, 103 S.Ct. at 2333 (quoting *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)). Courts reviewing the legitimacy of search warrants should not interpret supporting affidavits in a hypertechnical manner; rather, a realistic and commonsense approach should be employed so as to encourage recourse to the warrant process and to promote the high level of deference traditionally given to magistrates in their probable cause determinations. *Id.,* 462 U.S. at 236–37, 103 S.Ct. at 2331–32 (citing *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).

The special agent's search warrant affidavit in the case before us contained the following references from which the issuing magistrate reasonably could have concluded that appellees' former premises was a business involved in commercial activity and, therefore, within the intended scope of section 844(i): (1) paragraph 2 describes appellees' former premises as "T.C. Miller & *Company* . . . an *accounting/investment* entity owned and operated by Tanfield C. Miller"; (2) paragraph 4 refers to appellees' former premises as a *"business* location"; (3) paragraph 5 refers to *"business* related items" that should have been destroyed in the fire; and (4) paragraph 7 refers to "the corporate book for 'Dania Development', an active *account* handled by TCM & Co." Aff. at 1–2 (emphasis added). Furthermore, after establishing the business nature of appellees' premises in paragraphs 1–11, paragraph 12

of the affidavit recites the "commerce" nexus necessary to convict under section 844(i). *Id.* at 3. Finally, paragraph 13 of the affidavit consolidates the assertions of commercial activity and satisfaction of the requisite commerce nexus by "submit[ting] that there is *probable cause* to believe that evidence of a violation of ... Section 844(i), may be found at [appellees' new business location]." *Id.* (emphasis added).

An issuing magistrate reviewing this warrant in a "practical, commonsense [manner] ... given all the circumstances set forth in the affidavit," *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332, reasonably could conclude from paragraphs 1–11 of the affidavit that appellees' former premises was involved in commercial activity and, therefore, that the commerce nexus required by section 844(i) had been demonstrated. Furthermore, the issuing magistrate reasonably could conclude that stating the need for a commerce nexus in paragraph 12 of the affidavit—immediately following the assertion of commercial activity—was not, as stated by the district court, a "mere recitation of the federal arson statute [that] does not provide the necessary nexus to interstate commerce," but rather was a logical transition into the assertion of probable cause in paragraph 13.

From our reading of the search warrant affidavit, we conclude that it offers an orderly, logical progression from initially establishing commercial activity to ultimately asserting probable cause under section 844(i) and that, as a matter of law, it is factually sufficient to establish probable cause of a federal crime. The district court demands of both the special agent and the issuing magistrate a hypertechnical specificity that is not in keeping either with the legislative history of section 844(i) or with the "practical, commonsense" standard of preparing and reviewing search warrant affidavits as espoused in *Gates.*

The district court relies on the former Fifth Circuit holding in *United States v. Brouillette,* 478 F.2d 1171 (5th Cir.1973), in concluding that the search warrant affidavit in the case before us "alleged no facts to support a finding that the property destroyed ... [was] 'used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.'" In *Brouillette,* defendants were convicted of operating a prostitution ring in Louisiana in violation of 18 U.S.C. § 1952, which prohibits the use of interstate commerce in promoting, establishing, or managing an unlawful activity. *Id.* at 1173. On appeal defendants sought to invalidate a search warrant obtained by federal investigators on grounds that the warrant did not "present evidence ample to establish probable cause that a *federal crime* ha[d] been committed." *Id.* The Fifth Circuit reversed and held that "[t]he deficiency in the warrant is the failure in any respect to show underlying facts which tend to establish a connection with the use of interstate facilities." *Id.* at 1176. The court further noted that "the agent ... who obtained the warrant and gave the supporting affidavit never presented *any evidence whatsoever* to support the bald assertion that these appellants had violated the federal law." *Id.* at 1173–74 (emphasis added).

*Brouillette* clearly is distinguishable from the case before us for several reasons. The criminal statute at issue in *Brouillette,* Racketeering Enterprises—Travel or Transportation Act, Pub.L. No. 87–228, 75 Stat. 498 (1961) (codified as amended at 18 U.S.C. § 1952 (1988)), was enacted in an effort to address "numerous instances of the use of the facilities of interstate commerce by racketeers and hoodlums to promote ... illegal enterprises ... [including] prostitution." H.R.Rep. No. 966, 87th Cong., 1st Sess. 2 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2664, 2665. Furthermore, during enactment the House Committee on the Judiciary acknowledged that it "wishe[d] to clearly point out that [section 1952 would] ... not preempt the area covered by it.... [V]iolations of State law involving ... prostitution ... [would] be subject to State and local prosecution by State and local authorities." *Id.* at 3, *reprinted* at 2665. By explicitly acknowledging its intent to not preempt state law in enacting section 1952, Congress placed law enforcement officials and magistrates on notice that search warrants prepared and issued under auspices of section 1952 must provide an unambiguous basis for probable cause of a federal crime. In light of such

legislative guidance that counsels in favor of a restrictive view of search warrant affidavit sufficiency requirements, the Fifth Circuit in *Brouillette* was clearly within its province in invalidating the warrant because "there [was] no specific statement in the affidavit which establishe[d] that interstate transportation or facilities were used in the furtherance of the criminal prostitution activity." *Brouillette*, 478 F.2d at 1175.

Contrasted with the legislative history of section 1952 is that of section 844(i), as detailed above, which supports a more expansive view of the requirements for establishing a commerce nexus by specifically indicating that the jurisdictional scope of the federal arson statute encompasses "substantially all business property." Inasmuch as the legislative history of *Brouillette* counsels against such an expansive view, we conclude that *Brouillette* is inapposite to the probable cause issue in the case before us. As dictated by legislative intent, differing statutory contexts give rise to disparate search warrant affidavit sufficiency requirements. The legislative history of section 844(i) clearly supports our conclusion that, notwithstanding its failure to specifically state that TCM was a business involved in interstate commerce, the search warrant affidavit establishes probable cause of a federal crime.

We disagree with the district court's acceptance of appellees' claim that "the instant case involves facts 'strikingly similar' to *Brouillette*." The cases are factually dissimilar in a most critical area—the content of the respective search warrant affidavits. Review of the *Brouillette* affidavit reveals that it is essentially devoid of factual information within which federal jurisdiction might be rooted. *Brouillette*, 478 F.2d at 1174–75. The affidavit in the case before us, however, contains repeated references to the business nature of appellees' former premises, thereby imparting federal jurisdiction under the "commercial activity" standard of *Russell*.

### Conclusion

The Fourth Amendment's prohibition against unreasonable searches and seizures serves as an important safeguard of individual rights and liberties. When called upon by law enforcement officials to determine the legitimacy of search warrants and their sup-

porting affidavits, issuing magistrates and reviewing courts alike must strike a delicate balance between constitutional guarantees against excessive intrusions into areas of individual freedom and the Government's need to access and to secure relevant evidence in criminal prosecutions. In particular, issuing magistrates are given the unenviable task of making "firing line" decisions that attempt to encourage availment of the warrant process while simultaneously striving to protect citizens from unwarranted governmental interference. In recognition of the difficulty inherent in discharging this responsibility, reviewing courts lend substantial deference to an issuing magistrate's probable cause determinations.

Because the search warrant affidavit asserts sufficient factual information about the business nature of appellees' former premises to allow the issuing magistrate to reasonably conclude that federal jurisdiction was proper under section 844(i), we will not disturb the magistrate's finding of probable cause in this case. Consequently, the district court's order granting appellees' motion to suppress and for return of property is REVERSED.