[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-11991

_____

D.C. Docket No. 7:11-cr-00028-H-TQL-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GARY LOCKETT,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(August 28, 2013)

Before PRYOR and HILL, Circuit Judges, and O'KELLEY,[*] District Judge.

PER CURIAM:

Gary Lockett appeals his convictions for possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). Lockett argues that the district court erred in denying his motion to suppress evidence observed in plain view after officers entered his residence without a warrant and to suppress evidence seized after officers conducted a subsequent search pursuant to a search warrant. Specifically, Lockett contends that this evidence should be excluded because: (1) there was no probable cause to support the warrantless entry; (2) there were no exigent circumstances to support the warrantless entry; and (3) there was no probable cause to support the issuance of the search warrant.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Factual Background

On February 3, 2011, officers were conducting surveillance of Lockett's residence at 708 Raelyn Lane, Enigma, Berrien County, Georgia (the "Property").

---

[*] Honorable William C. O'Kelley, Senior United States District Judge for the Northern District of Georgia, sitting by designation.

The Property is surrounded by a single six-foot privacy fence and includes Lockett's residence and an outbuilding. A confidential source had previously informed law enforcement officials that Lockett was using the Property to store narcotics. A second source, Wesley Lamar Tuff, Jr. ("Tuff"), had stated that he had purchased approximately one kilogram of cocaine from Lockett or through Lockett over the course of several transactions.

Officer Jack Winningham of the Lowndes County Sheriff's Office ("Officer Winningham") and Special Agent Andrew Denmark of the Drug Enforcement Administration ("Agent Denmark") were parked in a vehicle approximately 100 yards from the Property. They used binoculars and a telephoto lens to observe the Property, but they could not see the outbuilding or inside the residence. Between 8:20 a.m. and 4:04 p.m., they observed six vehicles and 13 people come and go from the Property. One of the 13 individuals who left was Lockett. As Lockett had been inside the residence when the surveillance began, this meant that there was still at least one unidentified person on the Property before the warrantless entry.

At approximately 12:30 p.m., Officer Winningham and Agent Denmark witnessed Lockett and an unidentified man depart the Property in a green Dodge Charger (the "Dodge"). The Dodge traveled approximately 2,000 feet away from

the Property and stopped.  The man got out and walked away into the woods carrying a white plastic grocery bag.  Lockett returned to the Property immediately thereafter.

Another vehicle, a black Nissan Altima (the "Nissan"), entered the Property at 3:47 p.m., stayed approximately 15 minutes, and left.  The Nissan was occupied by Jason Wynn ("Wynn") and Shannon Young ("Young").  Officer Winningham notified other officers in the area when the Nissan departed the Property.  Special Agent Hubert Jordan ("Agent Jordan") then followed the Nissan from the time it entered the paved road outside the Property until it reached Highway 82.  Agent Jordan did not observe the Nissan while it was on the dirt road immediately outside the Property.  Soon thereafter, Agent Jordan turned the vehicle over to Officer Chris Strickland ("Officer Strickland") with the Tift County Sheriff's Office so that he could perform a traffic stop of the Nissan.

Officer Strickland attempted the traffic stop at approximately 4:00 p.m., but Wynn and Young refused to stop for several miles.  When they did stop, they jumped out of the Nissan and fled on foot.  Officer Strickland and Agent Jordan chased Wynn and Young for about 400 to 500 yards.  After Wynn and Young were apprehended, the officers recovered a bag containing 58 grams of cocaine and 4 grams of marijuana.  By the time the chase concluded, it had drawn a

4

significant amount of attention.  Several officers had responded with their lights and sirens activated, and people had left their homes or stopped their vehicles to watch.

While searching one of the suspects, Officer Strickland found a cell phone but did not take it.  He could not remember whether he found the cell phone on Wynn or Young.  Shortly thereafter, the suspect was seen talking on the cell phone in the back of a patrol car.  Agent Jordan removed the suspect from the patrol car and took the cell phone.  At the time, Agent Jordan did not examine the phone to see to whom the suspect was speaking, in part because he believed he would need a court order to do so.

At 4:16 p.m., Agent Denmark and Officer Winningham overheard radio traffic describing Officer Strickland and Agent Jordan's pursuit of Wynn and Young.  Agent Denmark estimated that the chase lasted less than five minutes.  He then observed Lockett and an unidentified man walk out of the residence and to the rear of the Property where the outbuilding was located.  Lockett was on the telephone.  Agent Denmark could not see whether they entered the outbuilding.  When the men walked back towards the front of the Property, the unidentified man was on the telephone.  The two men left the Property in the Dodge at 4:39 p.m.

At approximately 4:46 p.m., officers stopped Lockett about five to six miles away from the Property (the "Stop"). Agent Jordan arrived at the Stop approximately 10 minutes later. Agent Jordan testified before the district court that he did not remember talking to Lockett and that he observed nothing during the Stop that would lead him to believe Lockett knew about the surveillance on the Property. No drugs were found in the Dodge.

Thereafter, all of the officers involved in the operation met at the Stop to discuss the next step. While he was waiting for the officers to assemble, Agent Jordan contacted Special Agent Stripling Luke of the Georgia Bureau of Investigation ("Agent Luke") to discuss applying for a search warrant. Once they were assembled, the officers discussed what they had learned from their surveillance. They ultimately decided to secure the residence in light of the following information: (1) they did not know who was still in the residence; (2) they were concerned about preserving evidence and preventing its destruction; (3) they had observed a suspicious amount of traffic coming and going from the Property during the day; (4) they had found Wynn and Young with drugs in their possession shortly after they had left the Property; (5) they believed drugs were still on the Property, since none were recovered at the Stop; and (6) they were concerned that Lockett had been tipped off about the police activity because the

6

Nissan traffic stop had drawn significant attention from the surrounding community, an officer had observed either Wynn or Young talking on a cell phone in the back of a patrol car, and Lockett had left the residence soon after the Nissan traffic stop.

At approximately 5:45 p.m., officers approached Lockett's residence and knocked on the door. Sophie Gordon ("Gordon"), Lockett's girlfriend, answered and the officers explained that they were there to secure the residence until a search warrant was obtained. They then conducted a walk-through of the residence and confirmed that there were no other occupants aside from Gordon and her two children. During the walk-through, the officers observed a cocaine press, a money counting machine, and packaging material that resembled the package of drugs seized from the Nissan, all of which were in plain view. The officers then remained in the living room with Gordon and her two children until a search warrant was obtained.

At approximately 7:05 p.m., Agent Luke presented an application for a search warrant to Judge Dane Perkins (the "Search Warrant"). In the supporting affidavit (the "Affidavit"), Agent Luke testified that: (1) law enforcement officers had observed the Property over the course of the day; (2) this surveillance had culminated in the Nissan traffic stop; (3) during the Nissan traffic stop, Wynn and

7

Young were found to be in possession of cocaine and marijuana; (4) a warrantless entry into the residence to prevent the destruction of evidence had resulted in the discovery of a cocaine press, money counting machine, and suspected cocaine packaging material in plain view; (5) a reliable confidential source had stated that Lockett used the Property to store narcotics; (6) the Property was surrounded by a privacy fence with two wooden gates; and (7) in January 2011, Tuff had told officers that he had purchased approximately one kilogram of cocaine from Lockett.  Judge Perkins signed the Search Warrant and the search was executed at 7:25 p.m.  Pursuant to this search, officers discovered powder cocaine, crack cocaine, marijuana, and several firearms on the Property.

B.      Procedural History

On May 11, 2011, Lockett was indicted by a federal grand jury for (1) possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1); (2) possession with intent to distribute 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1); (3) possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1); and (4) possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A).

On August 18, 2011, Lockett moved to suppress the evidence discovered during the warrantless entry and all evidence seized during the search of the

8

Property pursuant to the Search Warrant.  First, Lockett argued that the evidence obtained during the warrantless entry should be suppressed because, "[w]ithout conceding that the officers . . . had probable cause to enter his residence, . . . the entry was unreasonable due to the absence of exigent circumstances." Specifically, because the occupants of the residence did not know they were under surveillance, neither probable cause nor exigent circumstances existed to justify the warrantless entry.  Second, Lockett argued that the evidenced seized pursuant to the Search Warrant should also be suppressed because the Search Warrant was based on evidence illegally obtained during the warrantless entry.  Lockett contended that if this illegal evidence was omitted from the probable cause analysis, the Search Warrant application and supporting Affidavit failed to establish probable cause.

On November 22, 2011, the district court held an evidentiary hearing on Lockett's motion and heard testimony from Agent Jordan, Officer Winningham, Agent Denmark, and Officer Strickland.  Following this hearing, the district court denied Lockett's motion to suppress.  The district court found that the officers had an objectively reasonable basis to believe that exigent circumstances required the warrantless entry of Lockett's residence because the officers could have reasonably determined, under the totality of the circumstances, that Lockett knew

9

of the surveillance and that evidence might be destroyed before they could obtain a search warrant. The district court also found that because exigent circumstances justified the warrantless entry of Lockett's residence, it was not improper for Agent Luke to list in the Affidavit the evidence observed during the warrantless entry or for Judge Perkins to rely on that evidence in issuing the Search Warrant. The district court declined to consider whether the warrantless entry was supported by probable cause because Lockett "did not specifically argue lack of probable cause until he submitted his reply brief." Finally, the district court concluded that the cocaine press, money counting machine, and packaging materials established probable cause for issuing the Search Warrant.

On December 6, 2011, Locket filed a motion for reconsideration and asked the district court to reconsider its refusal to address whether there was probable cause for the warrantless entry. Lockett argued that while the brunt of his initial brief focused on exigent circumstances, he explicitly stated that he was not conceding that there was probable cause for the warrantless entry. The district court denied the motion for reconsideration on December 21, 2011, but only after finding that both probable cause and exigent circumstances existed to justify the warrantless entry of Lockett's residence.

Thereafter, Lockett entered into a plea agreement with the government and pleaded guilty to Counts 1 and 4 of the indictment. In exchange, the government moved to dismiss Counts 2 and 3. Although Lockett waived his right to appeal under certain circumstances, he expressly reserved the right to appeal the district court's order denying his motion to suppress. Lockett was ultimately sentenced to 202 months' imprisonment on Count 1 and 60 months on Count 4, to be served consecutively, for a total of 262 months.

## II.    STANDARD OF REVIEW

Review of a district court's denial of a motion to suppress evidence presents a mixed question of law and fact. *United States v. Welch*, 683 F.3d 1304, 1307 (11th Cir. 2012); *United States v. Tobin*, 923 F.2d 1506, 1510 (11th Cir. 1991) (en banc). "The district court's findings of fact control unless they are clearly erroneous, but its interpretation and application of law are reviewed de novo." *Welch*, 683 F.3d at 1307. In reviewing the district court's ruling, this Court must construe the facts in the light most favorable to the prevailing party. *Tobin*, 923 F.2d at 1510.

III.    ANALYSIS

A.    Probable Cause for Warrantless Entry

First, the government contends that Lockett failed to preserve this issue for appellate review because it was not properly briefed in his initial motion to suppress. This Court has held that motions to suppress "must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented." *United States v. Richardson*, 764 F.2d 1514, 1527 (11th Cir. 1985). "A court need not act upon general or conclusory assertions founded on mere suspicion or conjecture . . . ," *id.*, and arguments not properly raised before the district court are waived on appeal absent plain error, *United States v. Sentovich*, 677 F.2d 834, 837 (11th Cir. 1982).

Here, Lockett's original motion contained only one sentence regarding the existence of probable cause: "[w]ithout conceding that the officers here had probable cause to enter his residence, Lockett shows that the entry was unreasonable due to the absence of exigent circumstances." To the extent Lockett asserted that probable cause did not exist, it was merely a conclusory assertion and, thus, likely would have been waived on appeal. *See Richardson*, 764 F.2d at

12

1527.  However, since this issue was ultimately addressed and decided by the district court, we assume that it was properly preserved for review.

"The question of what amounts to 'probable cause is purely a question of law and hence is subject to plenary review by this court.'" *Tobin*, 923 F.2d at 1510 (quoting *United States v. Hurtado*, 779 F.2d 1467, 1477 (11th Cir. 1985)). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be discovered in a particular place. *Id.* A fair probability exists "when the facts and circumstances would lead a reasonably prudent person to believe that the place to be searched contains contraband or evidence of a crime." *United States v. Lopez*, 649 F.3d 1222, 1245 (11th Cir. 2011). "The connection between the objects to be seized and the premises to be searched can be established 'from the particular circumstances involved and need not rest on direct observation.'" *Id.* (quoting *United States v. Tate*, 586 F.3d 936, 943 (11th Cir. 2009)).

Here, the officers were aware of the following facts:  (1) a confidential source had stated that Lockett's residence was used to store narcotics; (2) Tuff had recently stated that he had purchased approximately one kilogram of cocaine from Lockett; (3) approximately 13 individuals and six vehicles had come and gone from the Property while the officers were observing it; (4) an unidentified man

13

rode with Lockett a short distance away from the Property, got out of Lockett's vehicle, and walked away into the woods carrying a white grocery bag; and (5) Wynn and Young resisted a routine traffic stop and were found with cocaine and marijuana shortly after they left the Property.

Lockett argues that the two tips and the unusual amount of traffic to and from the Property are insufficient to support probable cause for the warrantless entry of his residence. (*See* Appellant's Br. 14.) He claims that the key question on appeal is whether the discovery of narcotics at the Nissan traffic stop created probable cause to support the warrantless entry of Lockett's residence. (*Id.*) Lockett relies on a Georgia state case, *Shivers v. State*, 258 Ga. App. 253, 573 S.E.2d 494 (2002), to argue that this information "amounted to no more than mere suspicion" of criminal activity which cannot "support [the] warrantless entry of . . . [a] defendant's residence." (Appellant's Br. 17.)

Lockett's argument fails for two reasons. First, his argument frames the probable cause inquiry too narrowly. A court cannot evaluate each piece of evidence on an individual basis and then disregard it if, standing alone, it fails to establish probable cause; rather, a court must examine and consider all of the evidence under the totality of the circumstances. *See Tobin*, 923 F.2d at 1510 (including consideration of the totality of the circumstances in the probable cause

14

analysis). Thus, while a court can evaluate and consider an individual piece of the puzzle to determine the existence of probable cause, the ultimate inquiry turns on the picture presented when those pieces are combined and viewed as one. Here, the officers relied on more than just the Nissan traffic stop in making their warrantless entry. They had a plethora of information which, when considered under the totality of the circumstances, suggested a fair probability that the Property would contain contraband or evidence of a crime.

Second, Lockett's attempt to compare the instant case with *Shivers* is not persuasive. In *Shivers*, officers received a search warrant after submitting a supporting affidavit with the following information: (1) allegations from unnamed informants that the defendant was selling narcotics; (2) conclusory and uncorroborated statements from a "tipster" claiming the defendant hid cocaine in his residence and had sold him cocaine in the past; (3) a report that a vehicle was stopped after leaving defendant's residence and cocaine was found in the passenger's sock; and (4) stale reports from officers who smelled marijuana on the defendant when they spoke with him outside his residence. *Shivers*, 258 Ga. App. at 254–57, 573 S.E.2d at 496–98. After reviewing this evidence, the Georgia Court of Appeals concluded that it failed to establish probable cause to support a search warrant. *Id.* at 257, 573 S.E.2d at 498. At best, "police officers were in

15

possession of mere rumors . . . that [defendant] was violating the drug laws. Mere rumors of criminal activity from sources not otherwise shown to be reliable do not establish probable cause . . . ." *Id.*

Here, officers staked out the Property for approximately eight hours and observed no less than six vehicles and 13 people come and go. These 13 individuals included an unidentified man who inexplicably walked off into the woods carrying a grocery bag and Wynn and Young, who were discovered with narcotics just after they departed the Property. This suspicious traffic is a key part of the probable cause analysis in the instant case and was completely absent from *Shivers*.

Second, the Nissan traffic stop is arguably more probative of illegal activity than the one that occurred in *Shivers*. In *Shivers*, the Georgia Court of Appeals discounted the evidence discovered in the traffic stop because the officers did not witness the driver take contraband from the defendant's residence and there was nothing to indicate that the passenger's information was reliable. *Id.* at 256, 573 S.E.2d at 497. Here, officers had witnessed a suspicious amount of traffic coming and going from the Property throughout the course of the day. When they attempted to conduct a routine traffic stop of one of these vehicles, Wynn and Young refused to stop, fled on foot, and were ultimately apprehended with a bag

16

containing 54 grams of cocaine. Shortly thereafter, officers observed one of them talking on the phone *at approximately the same time* officers observed Lockett talking on the phone at the Property. While the connection between the cocaine found at the Nissan traffic stop and the Property remained inconclusive at that point, the unusual amount of traffic on the Property, the fact that Wynn and Young attempted to flee from officers immediately after leaving the Property, the discovery that Wynn and Young possessed narcotics, and their subsequent phone call from the patrol car rendered this traffic stop far more probative of illegal activity than the traffic stop in *Shivers.* In fact, when the Nissan traffic stop is viewed in conjunction with the other evidence then known to the officers under the totality of the circumstances, it rises to more than a "mere suspicion" of illegal activity. It creates a "fair probability" that the Property contained contraband or evidence of a crime. *See United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) ("[P]robable cause deals 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'") (quoting *Illinois v. Gates*, 462 U.S. 213, 241, 103 S. Ct. 2317, 2333, 76 L. Ed. 2d 527 (1983)).

17

B.    Exigent Circumstances

Next, Lockett argues that exigent circumstances did not exist because there was no evidence that the occupants of the Property knew they were under surveillance.  (Appellant's Br. 17–21.)  Without such evidence, Lockett contends that the officers and agents could only speculate that evidence would be destroyed, and "[m]ere speculation about the occupants [sic] suspicions, without any factual support, is not enough to overcome the warrant requirement."  (*Id.* at 20 (relying on *United States v. Lynch*, 934 F.2d 1226, 1233 (11th Cir. 1991)).)

As noted above, a warrantless search is "presumptively unreasonable" unless it is supported by both probable cause and exigent circumstances.  *Tobin*, 923 F.2d at 1510.  While the mere presence of contraband does not create exigent circumstances, such circumstances may arise when "there is danger that the evidence will be destroyed or removed."  *Id*.  The test used to determine whether exigent circumstances exist is an objective one; "[t]he appropriate inquiry is whether the facts . . . would lead a reasonable, experienced agent to believe that evidence might be destroyed before a warrant could be secured."  *Id*. (internal quotation marks omitted).  "[T]he need to invoke the exigent circumstances exception to the warrant requirement is 'particularly compelling in narcotics cases' because narcotics can be so quickly destroyed."  *Id.* (quoting *United States v.*

18

*Young*, 909 F.2d 442, 446 (11th Cir. 1990)).  However, circumstances are not normally considered exigent when the suspect is unaware of police surveillance. *Id.* at 1511; s*ee also Lynch*, 934 F.2d at 1232–33 (11th Cir. 1991) (finding exigent circumstances did not exist where those inside the house were unaware of the police surveillance).

Here, exigent circumstances did exist because, under the circumstances, it was objectively reasonable for the officers and agents to believe that Lockett was aware of their surveillance after Wynn and Young's arrest.  First, officers observed Lockett talking on the phone at approximately the same time that either Wynn or Young made a call from the back of a patrol car.  This fact distinguishes the instant case from those where an officer's determination of exigent circumstances is unreasonable because the suspect was unaware of the police surveillance.  In *United States v. Lynch*, for example, this Court held that exigent circumstances did not exist because the two suspects were arrested out of sight of the defendant's house, the arrestees were not expected to return to the house that night, and there was no reason to believe that those who remained inside the house knew of the officers' presence.  934 F.2d at 1232–33.  Here, however, officers did have reason to believe that Lockett knew of their surveillance, i.e., the phone call. In particular, the circumstances giving rise to that call and its timing provided

19

strong, circumstantial evidence that Lockett had knowledge of the police surveillance.

In addition to that phone call, the officers had probable cause to believe that narcotics were on the Property and knew that such evidence could be quickly and easily destroyed. They also knew that at least one individual remained on the Property and reasonably concluded that this individual may have been instructed to destroy or remove any evidence before police arrived. When these circumstances are considered in conjunction with the phone call, a reasonable and experienced agent could believe that Lockett knew of the surveillance and that he would attempt to destroy any evidence of narcotics before a warrant could be issued. Accordingly, exigent circumstances existed and, because probable cause also existed, the officers' initial, warrantless entry to secure the Property did not violate the Fourth Amendment.

C.    Probable Cause for a Search Warrant

Finally, Lockett argues that the evidence discovered pursuant to the Search Warrant should have been suppressed because (1) the Search Warrant was based, in part, on evidence observed[1] during the illegal warrantless entry, and (2) the

---

[1] Lockett argues that this evidence was illegally seized during the warrantless entry. However, there is no evidence that officers actually *seized* any evidence during the walk-through. Rather, the parties' stipulations and the district court's findings of fact reflect that the cocaine

20

Affidavit and application for the Search Warrant failed to establish probable cause. (Appellant's Br. 21–27.)

Probable cause to support a search warrant exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a certain location. *Gates*, 462 U.S. at 238, 103 S. Ct. at 2332. When evaluating the propriety of a search warrant, this Court must determine "whether the [issuing judge] had sufficient material before him to permit an independent judgment that there was probable cause to justify a search." *United States v. Viera*, 644 F.2d 509, 511 (5th Cir. Unit B 1981). When a search is conducted pursuant to a warrant, the burden is on the defendant to show that the warrant is invalid. *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980).

Lockett first contends that the Search Warrant is invalid because the cocaine press, money counting machine, and drug packaging material were observed during a warrantless entry that was unsupported by either probable cause or exigent circumstances. As this Court has already determined that the warrantless entry *was* supported by probable cause and exigent circumstances, this argument has no merit. *See United States v. Holloway*, 290 F.3d 1331, 1338 (11th Cir.

---

press, money counting machine, and suspected drug packaging materials were simply observed in plain view.

21

2002) (finding seizure of evidence without a warrant was authorized because the officer's presence on the property was justified by the exigencies of the situation).

Even if the warrantless entry violated the Fourth Amendment, the evidence obtained pursuant to the Search Warrant would still be admissible because the information contained in the Affidavit was sufficient to establish probable cause even without the items observed in plain view. When a government agent makes an initial warrantless entry that arguably violates the Fourth Amendment and then relies in part on what he saw during that entry to obtain a search warrant, this Court applies a two-part test to determine whether evidence seized during the execution of the warrant is admissible regardless of whether the initial entry violated the Fourth Amendment. *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012). First, the court must "excise from the search warrant affidavit any information gained during the arguably illegal initial entry and determine whether the remaining information is enough to support a probable cause finding." *Id.* If the remaining information is enough to support a probable cause finding, the court must then "determine whether the officer's decision to seek the warrant was 'prompted by' what he had seen during the arguably illegal entry." *Id.* To determine whether the officer's decision to seek a warrant was prompted by what he saw during the initial entry, courts ask "whether the officer would have sought

22

the warrant even if he had not entered." *Id.* at 1260–61. "If the officer would have done so, his decision to seek the search warrant is supported by an 'independent source,' and the evidence seized under the warrant is admissible regardless of whether the initial entry violated the Fourth Amendment."[2] *Id.* at 1261.

Here, Lockett argues that the Affidavit failed to establish probable cause without the items observed in plain view because it contained only "rumors from unreliable informants" and a mere "suspicion that Lockett may be involved in drug activity." (Appellant's Br. 27.) When determining the existence of probable cause from an informant's tip, an issuing judge must consider the informant's veracity or reliability and basis of knowledge. *See Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (noting that in assessing whether an informant's tip rises to the level of probable cause, courts consider the totality of the circumstances, including the informant's veracity, reliability, and basis of knowledge, as well as any independent corroboration of the details of the tip). The informant's "veracity" or

---

[2] The independent source rule allows the admission of "evidence obtained from a lawful source that is independent of any Fourth Amendment violation . . . , the rationale being that the exclusionary rule should not put the government in a worse position than if the constitutional violation had not occurred." *Noriega*, 676 F.3d at 1260; s*ee also Nix v. Williams*, 467 U.S. 431, 443, 104 S. Ct. 2501, 2509, 81 L. Ed. 2d 377 (1984) ("When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.").

"reliability" and his "basis of knowledge" do not stand independent of one another; rather, "they are better understood as relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233, 103 S. Ct. at 2329 (citations omitted).

Lockett accurately notes that the Affidavit does not contain any information regarding the confidential source's reliability or veracity apart from noting that he had helped officers recover stolen equipment in the past. The Affidavit does not state how the confidential source obtained his information, when he obtained it, or his motivation for supplying it. The Affidavit's reference to Tuff is likewise limited; there is little information about where or when Tuff acquired his information or his motivation for supplying it. As it would have been difficult for the issuing judge to evaluate either the source's or Tuff's veracity, reliability, and basis of knowledge, these tips, standing alone, would have been insufficient to establish probable cause.

However, the Affidavit contained more than uncorroborated tips. It also recounted that officers had observed a suspicious amount of traffic coming and

24

going from the Property, that officers had found cocaine in Wynn and Young's possession just after they left the Property, that officers had attempted to verify Lockett's ownership of the Property, that Lockett had a criminal history, including previous violations of the Georgia Controlled Substances Act, and Agent Luke's sworn testimony that, based on his experience and training, he believed there was sufficient probable cause to support a search of the Property for evidence relating to ongoing violations of the Georgia Controlled Substances Act. *See United States v. Robinson*, 62 F.3d 1325, 1331 n.9 (11th Cir. 1995) (noting that in deciding whether to issue a search warrant, the issuing judge may properly rely upon the opinions and conclusions of an experienced law enforcement agent); *United States v. Gonzalez*, 969 F.2d 999, 1004 (11th Cir. 1992) ("Conduct innocent in the eyes of the untrained may carry entirely different 'messages' to the experienced or trained observer.") (quoting *United States v. Fouche*, 776 F.2d 1398, 1403 (9th Cir. 1985), *overruled on other grounds by California v. Hodari D.*, 499 U.S. 621, 111 S. Ct. 1547, 113 L. Ed. 2d 690 (1991)). Thus, even if the Affidavit is considered without the evidence observed during the walk-through, it still establishes probable cause under the totality of the circumstances.

Next, the court must "determine whether the . . . decision to seek the warrant was 'prompted by' what [was] seen during the arguably illegal entry." *Noriega*,

25

676 F.3d at 1260.  This is "a question of fact."  *Id.* at 1263.  The parties'
stipulation of the facts underlying Lockett's motion to suppress stated that the
officers and agents "decided to secure the residence to prevent the destruction of
evidence, and apply for a search warrant."  In light of this stipulation, it is
unnecessary to remand this matter to the district court for a factual finding on this
issue.  The record clearly reflects that the officers decided to pursue a search
warrant before they entered the Property.  Therefore, even if the warrantless entry
violated the Fourth Amendment as Lockett claims, the evidence seized under the
warrant is still admissible under the "independent source" exception to the Fourth
Amendment.  *Id.* at 1260.

## IV.    CONCLUSION

Here, neither the warrantless entry nor the subsequent search pursuant to the
Search Warrant violated the Fourth Amendment's proscription against
unreasonable searches and seizures.  The warrantless entry of Lockett's residence
was supported by both probable cause and exigent circumstances, and thus the
cocaine press, money counting machine, and drug packaging material observed in
plain view pursuant to that warrantless entry were admissible.  Furthermore,
because this evidence created a valid basis for finding probable cause to issue the
Search Warrant, any evidence obtained pursuant to the Search Warrant after the

26

warrantless entry was also admissible.  However, even if the initial, warrantless entry did violate the Fourth Amendment, the evidence obtained pursuant to the Search Warrant would still be admissible under the "independent source" exception to the Fourth Amendment.

**AFFIRMED**.