[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-14847

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JAMEY EUGENE ARWOOD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 5:19-cr-00484-LCB-SGC-1

_____

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

Jamey Arwood appeals his conviction for possession with intent to distribute 50 grams or more of methamphetamine, challenging the district court's denial of his suppression motion based on the good faith exception to the exclusionary rule. After careful review, we affirm.

## I.

A grand jury indicted Arwood on one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A). Arwood moved to suppress evidence seized and statements made after a search of his home pursuant to a search warrant. He argued that the search warrant and supporting affidavit violated the staleness doctrine because the information in the affidavit about a confidential source's ("CS") observing methamphetamine in Arwood's home did not include how recent the CS's information was. Thus, Arwood asserted, the district court had no factual basis to conclude that probable cause existed to issue the warrant.

The affidavit in support of the search warrant, sworn by Cullman County Sheriff's Office deputy Justin Bates, stated:

> Within the last 48 hours, Cullman Narcotics Enforcement Team Agents Sgt. Terry Smith and Justin Bates were contacted by a Confidential Reliable Source . . .

> regarding Jamey Eugene ARWOOD. The CS states that he/she went to ARWOOD[']S residence and while inside said residence, observed approximately one ounce of crystalline methamphetamine, in plain view in the living room.

Doc. 12-1 at 2–3.[1] The affidavit also stated that the CS was familiar with the appearance and distribution of controlled substances and had on two previous occasions provided reliable information to law enforcement that resulted in the seizure of controlled substances and arrests of suspects on drug charges.

In response, the government conceded that the affidavit was "poorly written" but argued that it was "clear that the Agent intended the 48-hour period to apply to when the CS saw the drugs as well as when [Bates] spoke to the CS." Doc. 15 at 8. In other words, the phrase "[w]ithin the last 48 hours" in the affidavit also referred to when the CS observed methamphetamine in Arwood's house. The government also contended that even if the affidavit failed to support a finding of probable cause, the good faith exception to the exclusionary rule should apply because any failure to establish probable cause was due to poor drafting, not to an intentionally or recklessly misleading or dishonest act.

A magistrate judge held a hearing on the motion to suppress at which Bates testified. According to Bates, the CS contacted him

---

[1] "Doc." numbers are the district court's docket entries.

on May 1 and said that, a few hours earlier, he saw methamphetamine in Arwood's living room. Bates met in person with the CS, who was able to identify Arwood in a photograph and who provided an address for Arwood's house that Bates confirmed was associated with Arwood. That same day, Bates wrote the affidavit, sought a search warrant for Arwood's house, and obtained the warrant. Bates further testified that the judge who signed the search warrant asked whether the events documented in the affidavit "all just occur[red] . . . today," or "when exactly the time frame was," and Bates told the judge that it had only been hours. Doc. 58 at 12. Bates intended the phrase "[w]ithin the last 48 hours," Doc. 12-1 at 2, to mean that "the whole circumstance happened within that time frame," Doc. 58 at 12.

A magistrate judge issued a report and recommendation ("R&R") that Arwood's motion to suppress be denied. The magistrate judge "bypass[ed] the question of probable cause and proceed[ed] to the question of whether the good faith exception [to the exclusionary rule] applie[d]," concluding that it did. Doc. 18 at 11. The judge first explained the limited circumstances under which the good faith exception should not apply and why none of those circumstances existed here. If the judge who signed the warrant wholly abandoned his judicial role or was misled by false information in the supporting affidavit, the good faith exception should not be applied, but there was no evidence suggesting as much here. The good faith exception also should not be applied if evidence showed that the affidavit supporting the warrant was so

lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable or where a warrant was so facially deficient that the executing officers could not have reasonably presumed it to be valid, but again, no such evidence existed here. Bates credibly testified that the CS provided him with information about Arwood on May 1, the same day he sought and obtained a search warrant. So even though the affidavit was less than clear about the timing of the CS's tip, Bates's testimony clarified that the information in the affidavit was fresh. Moreover, the warrant was not so facially deficient as to render unreasonable any presumption as to its validity: the warrant described the reliability of the CS who provided the information and "connected the defendant with the location to be searched, and that location with criminal activity." *Id.* at 15.

Second, the magistrate judge determined that the good faith exception should apply under the circumstances of this case. The judge emphasized that the search warrant connected Arwood, the house to be searched, and the possession of methamphetamine; the warrant provided some indication that the CS was truthful and reliable, and Bates's testimony "reinforced" the warrant's veracity and reliability; and Bates's credible testimony "clarifie[d]" that the information the CS provided "was fresh." *Id.* at 17, 19. Given these facts, the judge concluded, "it was reasonable for Agent Bates and other law enforcement agents to believe the information provided by the confidential source was fresh and probable cause for issuance of the search warrant existed." *Id.* at 19–20. Thus, the judge

concluded, the good faith exception applied and the evidence was admissible.

Over Arwood's objections, the district court adopted the R&R and denied the motion to suppress. Arwood entered a conditional guilty plea in which he preserved his right to appeal the denial of his motion to suppress. The district court sentenced Arwood to 90 months' imprisonment followed by 5 years' supervised release.

This is Arwood's appeal.

## II.

We review *de novo* whether the good faith exception to the exclusionary rule applies to a search, but the underlying facts of that determination are binding on appeal unless clearly erroneous. *United States v. Martin*, 297 F.3d 1308, 1312 (11th Cir. 2002). For clear error to exist, we "must be left with a definite and firm conviction that a mistake has been committed." *United States v. Pierre*, 825 F.3d 1183, 1191 (11th Cir. 2016) (internal quotation marks omitted). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010) (internal quotation marks omitted). In reviewing the denial of a motion to suppress, we consider the entire record and construe the facts in the light most favorable to the prevailing party. *United States v. Newsome*, 475 F.3d 1221, 1223–24 (11th Cir. 2007). We may affirm the district court's judgment for any reason supported

by the record. *United States v. Gibbs*, 917 F.3d 1289, 1293 n.1 (11th Cir. 2019).

### III.

The Fourth Amendment provides for the right to be free from unreasonable searches and seizures, and mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. "To obtain a warrant, police must establish probable cause to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Gibson*, 708 F.3d 1256, 1278 (11th Cir. 2013) (internal quotation marks omitted). The job of the issuing magistrate "is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . , there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Miller*, 24 F.3d 1357, 1361 (11th Cir. 1994) (alteration in original) (internal quotation marks omitted). Instead of being "hypertechnical" when interpreting affidavits, we adopt "a realistic and commonsense approach." *Id.* Our task is simply to confirm that the issuing magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983).

The information supporting the government's application for a warrant must not be stale, meaning it "must show that probable cause exists at the time the warrant issues." *United States v. Lopez*, 649 F.3d 1222, 1246 (11th Cir. 2011) (internal quotation marks omitted). If the information supporting a warrant violates

this staleness doctrine, evidence seized from a search pursuant to the warrant may be subject to the exclusionary rule, which would preclude the government from using that evidence in a criminal prosecution. *See Martin*, 297 F.3d at 1312. However, the Supreme Court has recognized a good faith exception to the exclusionary rule when "reliable physical evidence [is] seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate." *United States v. Leon*, 468 U.S. 897, 913 (1984).

Two inquiries govern whether the good faith exception applies. First, we ask whether "this case fits into one of the four limited sets of circumstances where the . . . good faith exception does not apply." *Martin*, 297 F.3d at 1313. This is where Arwood mounts his challenge. Specifically, he argues that the affidavit supporting the search warrant did not establish when the CS saw methamphetamine in Arwood's house, rendering it "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted). He adds that Bates's subsequent testimony cannot support a different reading of the affidavit because courts are limited to the face of the affidavit when determining whether it lacked sufficient indicia of probable cause. *See Martin*, 297 F.3d at 1313 ("[W]e look to the face of the particular affidavit at hand in order to determine whether the warrant is so devoid of probable cause that [the officer's] belief in its validity at the time it was issued was entirely unreasonable.")

Second, if there is no reason why the good faith exception must not apply, we ask "whether the . . . good faith exception applies in this case." *Id.* Arwood does not argue that the district court erred in answering this second question, so we address only the first question.

Although the affidavit supporting the warrant to search Arwood's house was imperfectly drafted, it was not so lacking in indicia of probable cause as to preclude the application of the good faith exception. The affidavit connected Arwood, the place to be searched, and the alleged criminal activity and provided additional information establishing the confidential source's reliability. *See id.* at 1314 (explaining that an affidavit should establish "a connection between the defendant and the residence to be searched and a link between the residence and any criminal activity"). Reading the affidavit "hypertechnical[ly]," it does not say when the CS saw methamphetamine in Arwood's house, but we cannot undertake such a reading. *Miller*, 24 F.3d at 1361. Applying a "realistic and commonsense approach," *id.*, it is reasonable to read "[w]ithin the last 48 hours" as describing when the CS saw methamphetamine in Arwood's house.

At bottom, "despite [any] deficiencies as to the specific dates and times . . . , we find that it was not *entirely unreasonable* for [Bates] to believe that what he wrote in the affidavit would be sufficient to support a finding of probable cause." *Martin*, 297 F.3d at 1315. "The affidavit contained sufficient indicia of probable cause to enable a reasonable officer to execute the warrant thinking it

valid." *Id.* Thus, we reject Arwood's argument that this case falls within one of the limited sets of circumstances where the good faith exception does not apply. We affirm.

**AFFIRMED.**